460 So.2d 469 (1984)
STATE of Florida, Appellant,
v.
Stephen BIVONA, Jr., Appellee.
No. 84-95.
District Court of Appeal of Florida, Fourth District.
December 5, 1984.
Rehearing and/or Certification of Conflict Denied January 9, 1985.
Jim Smith, Atty. Gen., Tallahassee, and Joan Fowler Rossin, Asst. Atty. Gen., West Palm Beach, for appellant.
Robert D. Jones, Royal Palm Beach, for appellee.
BARKETT, Judge.
This is an appeal by the State of an order discharging criminal defendant Stephen Bivona, Jr., under the speedy trial rule. We affirm.
On June 29, 1983, Stephen Bivona, Jr., was arrested at a Sears store in Bakersfield, California, for petty theft (shoplifting) and assault and battery (altercation with a Sears security officer). He refused to give the Sears security officer his name, and the Bakersfield police were called. The police officer who responded indicated that Bivona would have to identify himself to be released. Bivona refused, and was taken to jail. Upon arrival, he volunteered his name, and indicated that the reason he had not identified himself at the Sears store was because he was wanted in Florida for a bank robbery and for violation of probation. He then advised the police officer of the details of the bank robbery which had occurred in West Palm Beach, Florida.
Most of the information relative to the Florida crime was communicated by Bivona even after the police indicated that there were no outstanding warrants for his arrest. The probable cause affidavit for the West Palm Beach bank robbery was executed the day after Bivona's arrest in California as a direct result of his confession. The Bakersfield police report reflected that *470 after further investigation by the Bakersfield police regarding the Florida bank robbery, the West Palm Beach Police Department orally requested a "hold" on the defendant which was confirmed later by a teletype. Bivona was held in the California jail until he was collected by the West Palm Beach Police Department on August 4, 1983. He did not fight extradition, and there is no explanation in the record as to why the Florida authorities waited for approximately thirty-four days to pick him up in California.
On August 9, 1983, Bivona was arraigned, and on January 3, 1984, he filed his motion for discharge under the speedy trial rule. The motion was granted.
The State contends error in two ways. First, that the speedy trial period does not run from Bivona's California apprehension on June 29, 1983, but from his coming into the custody of the West Palm Beach police on August 4, 1983. Second, that even if the speedy trial period is triggered by the California arrest, Bivona waived the time limit by delaying the trial date.
Bivona contends that he was held by the California authorities from June 29, 1983, solely as a result of the Florida criminal charges, and that this holding on a Florida detainer constituted a "taking into custody" within the context of Rules 3.191(a)(1) and (a)(4), Florida Rules of Criminal Procedure, which provide, in relevant part:
Rule 3.191. Speedy Trial
(a)(1). Speedy Trial Without Demand. Except as otherwise provided by this Rule, and subject to the limitations imposed under (b)(1) and (b)(2), every person charged with a crime by indictment or information shall without demand be brought to trial... within 180 days if the crime charged be a felony, and if not brought to trial within such time shall upon motion timely filed with the court having jurisdiction and served upon the prosecuting attorney be forever discharged from the crime; provided, the court before granting such motion, shall make the required inquiry under (d)(3). The time periods established by this section shall commence when such person is taken into custody as defined under (a)(4)....
... .
(a)(4). Custody. For purposes of this Rule, a person is taken into custody, (i) when the person is arrested as a result of the conduct or criminal episode which gave rise to the crime charged, or (ii) when the person is served with a notice to appear in lieu of physical arrest.
The State argues that Rule 3.191(b)(1) should apply instead:
(b)(1). Prisoners Outside Jurisdiction. A person who is in federal custody or incarcerated in a jail or correctional institution outside the jurisdiction of this State or a subdivision thereof, or who is charged with a crime by indictment or information issued or filed under the laws of this State, is not entitled to the benefit of this Rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of this fact is filed with the court and served upon the prosecutor.
To support its position, the State calls our attention to the case of Hawkins v. State, 451 So.2d 903 (Fla. 1st DCA 1984), which has interpreted Florida Rule of Criminal Procedure 3.191(b)(1), supra, to apply to fugitives who are being held in another jurisdiction solely on the basis of the charges pending in this State. We cannot agree with the majority opinion in Hawkins, and agree rather with the dissent of Chief Judge Ervin in that case as the better-reasoned view.
We suggest that the facts of this case establish the danger of interpreting Rule 3.191(b)(1) as the majority does in Hawkins, rather than as Chief Judge Ervin interprets that rule in his dissent and as we interpret that rule now. Unlike the situation in Hawkins, where apparently the defendant deliberately made himself unavailable for trial during a portion of the 180-day period of time, Bivona cooperated fully *471 with the arresting authorities. He awaited extradition, and did nothing to thwart the State's efforts to bring him to Florida to face the charges against him. Yet he was incarcerated in California for 34 days waiting for the Florida authorities to extradite. Under the Hawkins majority view, the Florida authorities could perhaps have left him there for 60, 90, or even 360 days without a trial. This hardly seems to comport with the intention of the speedy trial rule. When Rule 3.191 is read as a whole, it appears clear that subsection (b)(1), supra, must be interpreted to apply when a defendant is incarcerated in jails outside the jurisdiction of this state on charges pending in the other state. Otherwise, the provisions of subsection (a)(4) of Rule 3.191 become totally meaningless.
The only question remaining is whether the trial court correctly determined that Bivona was "taken into custody ... as a result of the ... criminal episode which gave rise to the crime charged... ." under Florida Rule of Criminal Procedure 3.191(a)(4). The sole and unrebutted evidence before the trial court indicated that but for the incarceration request from West Palm Beach, he would have been free. Indeed, the State apparently conceded the point when asked by the trial court if there was any conflicting evidence regarding the reason for Bivona's detention:
THE COURT: [The California report] clearly says that when the gentleman gave his correct name that he was going to be released on the charges out there. Do you have any evidence to rebut that?
THE PROSECUTOR: Not at the present time, judge.
At this point Bivona fell within the ambit of Florida Rule of Criminal Procedure 3.191(a)(1) and (a)(4). The State had the burden of showing that he was being held in California on the California charges. It made no effort to produce any evidence to support that contention.
We find no merit in the second point proposed by the State. Accordingly, the order of the trial court is affirmed.
AFFIRMED.
ROBERT C. SCOTT, Associate Judge, concurs.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
I would reverse and remand.
The issue is whether the trial court erred by granting appellee's motion for discharge, in that 180 days had not run from appellee's coming into the custody of Florida authorities. I agree with the state's argument that the speedy trial period commenced, not upon appellee's California apprehension or at the time of his detainer there at the request of Florida authorities, but at the time he came into the custody of the West Palm Beach police.
Appellee contends that he was held by the Bakersfield, California, police from June 29, 1983, solely as a result of the Florida criminal charges, and that the Bakersfield authorities' holding of appellee on a detainer requested by Florida authorities constituted a taking into custody in the context of rule 3.191(a)(1), Florida Rules of Criminal Procedure. The trial court agreed with appellee.
The pertinent facts show that on June 29, 1983, appellee was arrested in Bakersfield, California, on charges of petty theft and assault and battery. After his arrest, he told the Bakersfield police that he was wanted in Florida for bank robbery and violation of probation and further told the police the details of the Florida crime. The Bakersfield authorities contacted West Palm Beach authorities, who requested appellee be held on the Florida charges. On June 30, 1983, appellee was charged by information with armed robbery and a warrant for his arrest was obtained. Appellee was transferred to West Palm Beach authorities on August 4, 1983.
My bases for disagreement with the trial court's order are the language of the appropriate rule of criminal procedure coupled with the additional record. Florida Rule of Criminal Procedure 3.191(b)(1) provides in part:

*472 A person who is in federal custody or incarcerated in a jail or correctional institution outside the jurisdiction of this State or a subdivision thereof, and who is charged with a crime by indictment or information issued or filed under the laws of this State, is not entitled to the benefit of this Rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of this fact is filed with the court and served upon the prosecutor.
Besides the fact that appellee was apprehended in California for petty theft and assault and battery, the additional record shows that he violently resisted efforts to apprehend him when confronted with that theft by the security officer, and refused to identify himself. A logical inference therefrom, I respectfully suggest, is that after that episode California authorities would not discharge appellee without bond nor disregard his criminal conduct in that state; the trial court's conclusion that appellee had been released from incarceration with respect to the California charges and was being held by authorities there solely because of their learning of the armed robbery in Florida is not supported by the additional record's narrative of the offenses and surrounding facts of the California episode. There is no compelling inference that the California crimes were insufficiently serious to support appellee's continued incarceration until the posting of bond addressed to the episode there.
It is a truism that to a society weary of armed robbery, discharge of a confessed armed robber because of a purported speedy trial rule violation is repugnant. Those involved in the judicial process should meticulously scrutinize the record and the law to determine whether the speedy trial period has indeed run. The dialogue between the prosecutor and the trial judge in this case reflects that adequate scrutiny of the record may not have occurred. The public has a right to expect that the speedy trial rule does not become a sword when it was intended as a shield. It becomes a sword when those charged slip through the cracks or, as here, when the prosecution does not carefully call to the trial court's attention the relevant contents of the record and the reasonable inferences therefrom. Trial judges may reasonably expect prosecutors to be as enthusiastic about prosecuting alleged felons as defense counsel are about setting them free.
Subsequent to the trial court's order in this case, the First District decided Hawkins v. State, 451 So.2d 903 (Fla. 1st DCA 1984), wherein the majority held that because of a change of language in the foregoing rule of criminal procedure, the first sentence of 3.191(b)(1) would include fugitives who are in custody of another state solely on the basis of the charges pending in this state. Were we to rely upon such holding, that reliance alone would warrant reversal, being mindful, however, that neither the prosecutor nor the trial court here could have known of the First District's decision. Judge Ervin, concurring in part and dissenting in part, takes issue with the Hawkins majority's analysis. I opt not to rely upon our companion court's analysis nor to adopt the dissenting view at this time. However, both the majority decision and the dissent in Hawkins provide authority and reasons for reversal.
The Florida cases of State v. Bassham, 352 So.2d 55 (Fla. 1977), Gaskins v. State, 415 So.2d 132 (Fla. 5th DCA 1982), and Cameron v. State, 376 So.2d 248 (Fla. 5th DCA 1979), involving "intrastate," not "interstate," matters, make clear that when a detainer for a second offense is placed on one already in custody for a first offense, the speedy time period does not begin to run from the date of custody for the first offense or from the beginning of the detainer for the second. Instead, it commences when the defendant is freed on the first offense and formally arrested on the second. Reversal here would be consistent with those cases.