716 P.2d 253

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Lehland Paul SPARKS, Defendant-Appellant.**

**No. 8704.**

Court of Appeals of New Mexico.

Feb. 6, 1986.

Certiorari Denied March 18, 1986.

Jacquelyn Robins, Chief Public Defender, David Stafford, Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals from his sentence of three concurrent five-year terms arising from his convictions of three fourth-degree felonies. The court suspended the sentences and placed defendant on probation for five years. The crux of defendant's appeal, however, involves the application of the Interstate Agreement on Detainers (IAD), NMSA 1978, Section 31-5-12 (Repl. Pamp.1984).

Defendant was indicted, in October 1978, on the three felony counts. On March 26, 1979, he entered guilty pleas. He, however, failed to appear, on May 15, 1979, at the sentencing proceeding, and the court issued a bench warrant for his arrest.

In 1982, defendant was incarcerated in a federal penitentiary on an unrelated charge. Federal prison officials advised defendant that, due to a New Mexico detainer on him, he could not obtain a minimum security classification. Effectively, this meant that defendant was denied access to work-release programs and furloughs as well as toughening his confinement conditions by raising his status to medium security.

After learning of the detainer, defendant requested, from the Curry County district attorney's office, a hearing on the outstanding sentencing. The district attorney responded with a document accepting temporary custody of defendant, pursuant to Article 3 of the IAD. Article 3 provides, in pertinent part:

A. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. ...

The federal prison, however, refused to grant custody of defendant to New Mexico. According to a "Detainer Action Letter,"

the prison official could not transfer temporary custody because the prison had no detainer for defendant on file. The record indicates that defendant had been transferred from a federal institution in California to a federal institution in Wisconsin; apparently the detainer on file in the California institution was not forwarded to the Wisconsin institution. The letter is dated April 5, 1983.

Six days after its receipt of the "Detainer Action Letter," New Mexico forwarded to the federal prison a letter, signed by the Curry County sheriff, and a bench warrant, signed by Judge Nieves of the Ninth Judicial District. In his letter, the sheriff stated: "Please use said warrant as detainer on subject for our department." The federal prison, in turn, accepted the warrant as a detainer.

On December 12, 1983, defendant again requested disposition of his detainer. New Mexico took no action on the request. Over a year later, on February 21, 1985, defendant made a third request for disposition. The state complied, and defendant returned to New Mexico.

Prior to the hearing on his detainer, defendant filed a motion to dismiss the convictions on the basis that the state had failed to return him to New Mexico within the 180-day requirement of the IAD. The trial court denied the motion, ruling that the 180-day requirement applies only where a detainer for "trial" is present, not where the detainer is only for sentencing.

On appeal, defendant argues that upon his return to New Mexico, the trial court erred in its refusal to dismiss the felony convictions against him and in its imposition of a sentence relative to those convictions. Defendant bases his argument for dismissal on the state's failure to comply with the IAD provisions. In support, defendant argues that defendant's request for the disposition of the sentencing in New Mexico was a cognizable request pursuant to the terms of the IAD. Defendant also asserts that the state's allegations of deficiencies in defendant's request for disposition of the sentencing are not sufficient to relieve the state's obligations under the IAD.

■ We hold that a request for the disposition of an outstanding sentencing is not cognizable under the IAD. Therefore, the trial court did not err in its refusal to dismiss the felony convictions. Because we hold that the IAD is not operative here, we do not discuss whether procedural deficiencies rendered defendant's requests for disposition inadequate.

■ The IAD is a congressionally-sanctioned interstate compact. *See* U.S. Const. art. I, § 10, cl. 3. The compact is federal law and, as such, subject to federal construction. *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The New Mexico Legislature adopted the IAD in 1971. 1971 N.M.Laws, ch. 270, § 1.

According to the language of the IAD, New Mexico has determined that "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." § 31–5–12. The purpose of the agreement, therefore, is "to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, and complaints." *Id.*

In order to accomplish its purpose, Article 3 of the IAD mandates that the prisoner must be informed by the warden that a detainer has been filed against him and that the prisoner may request the final disposition of the untried indictment, information or complaint which forms the basis for the detainer. *Id.* When the prisoner requests such a disposition, the warden must forward the request, along with a certificate, outlining the prisoner's current confinement status to the prosecutor and presiding judge of the state which would receive the prisoner for final disposition of the detainer, the "receiving state." The authorities in the receiving state, upon re-

ceipt of the prisoner's request, must try the prisoner within 180 days, absent good cause shown. If the receiving state fails to take such action, the indictment, information or complaint must be dismissed with prejudice, and the detainer will no longer have any effect.

In the case before us, the state argues that the IAD has no application. The state contends that the IAD is limited in application to cases where untried indictments, informations or complaints are outstanding against the prisoner. Because defendant has been convicted, the state asserts that the IAD is of no utility. We must then determine whether the requirements of the IAD may be invoked when the defendant has been convicted but has not been sentenced.

Because federal law governs the interpretation and application of interstate compacts, we look to a recent United States Supreme Court case for guidance. In *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), the Court held that the provisions of the IAD do not apply to probation revocations. By analogy, the state argues that because sentencing, like probation revocation, does not fall within the plain meaning of an "untried indictment, information or complaint," the provisions of the IAD should not be applied here. We agree.

We begin our analysis, as the Supreme Court did, with an examination of the language of Article 3 of the IAD. The operative words provide that Article 3 applies to detainers based on "any untried indictment, information or complaint." The Supreme Court stated that by their plain and unambiguous meanings "indictment," "information" or "complaint" refer to documents initiating criminal prosecution by charging the individual with a crime. Additionally, usage of the adjective, "untried," supports our conclusion that the IAD is not efficacious when the defendant has been convicted but not yet sentenced. *People v. Randolph,* 85 Misc.2d 1022, 381 N.Y.S.2d 192 (1976); *State v. Barnes,* 14 Ohio App.3d 351, 471 N.E.2d 514 (1984). *See also State*

*v. Garcia,* 99 N.M. 466, 659 P.2d 918 (Ct. App.1983) (a conviction refers to a finding of guilt and does not include the imposition of a sentence). We also note that language in the IAD provides that the defendant must be brought to trial within 180 days. The IAD, however, does not require that the case must be totally disposed of within 180 days.

In our case, as in the probation revocation situation, defendant has already been prosecuted. He already has pled guilty to three fourth-degree felonies. He, therefore, has been brought to trial. We conclude that the detainer in this case was not based on any untried indictment, information or complaint under the IAD. *See Carchman.*

Although defendant makes a strong argument in his attempt to distinguish *Carchman,* we find that the policy considerations which prompted the creation and adoption of the IAD are not present here. Defendant's situation is not a condition which the IAD was designed to remedy.

As the Court noted, in *Carchman,* one of the prime congressional objectives in the passage of the IAD was to deter the filing of virtually meritless detainers which would be retracted shortly following the inmate's release from prison. In the meantime, while the inmate was imprisoned, his conditions of confinement would be affected adversely by the presence of the detainer. For instance, as defendant here experienced, the prisoners often are denied a less restrictive classification and, thus, denied participation in work release and furlough programs, as well as required to reside in a more restrictive surrounding.

As in the case of the probation violation detainer in *Carchman,* however, the fear of filing meritless detainers is not present here. A sound basis supported the filing of this detainer. Defendant here had been convicted, and he had failed to appear for sentencing. The detainer, therefore, was unquestionably legitimate.

Additionally, the uncertainties which confront a prisoner who has a detainer based on an outstanding indictment, information

or complaint are much graver than those arising from an outstanding sentence. In the case of a prisoner affected by a detainer on an untried charge, invocation of the IAD procedures may result in a not guilty verdict totally displacing the detainer. Whereas, in our case, defendant is certain that he has been convicted of three felony offenses. The detainer based on the pending sentence might have been replaced by a detainer for the purposes of serving the sentence. Defendant could have experienced the similar adverse effects on his conditions of confinement. Invocation of the IAD procedure, therefore, may have had little effect on the terms of his prison treatment or rehabilitation. In any event, the uncertainty confronting defendant here was much less oppressive than that which confronts a prisoner whose conditions of confinement are adversely affected by a detainer stemming from an untried charge.

Defendant relies on *Tinghitella v. State of California*, 718 F.2d 308 (9th Cir.1983), which held that the IAD requirements apply to detainers based on pending sentences. *Tinghitella* was decided two years before *Carchman*. While *Tinghitella* involved a similar question, we believe the later pronouncement in *Carchman* compels the result we reach.

Accordingly, we affirm.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.