496 So.2d 130 (1986)
STATE of Florida, Petitioner,
v.
Stephen BIVONA, Jr., Respondent.
No. 66435.
Supreme Court of Florida.
October 16, 1986.
Jim Smith, Atty. Gen., and Joan Fowler Rossin, Asst. Atty. Gen., West Palm Beach, for petitioner.
Robert D. Jones of Fuchs and Jones, Royal Palm Beach, for respondent.
EHRLICH, Justice.
The decision of the district court in this case, State v. Bivona, 460 So.2d 469 (Fla. 4th DCA 1984), directly and expressly conflicts with a decision of another district court, Hawkins v. State, 451 So.2d 903 (Fla. 1st DCA), review denied, 459 So.2d 1040 (Fla. 1984). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Bivona robbed a West Palm Beach bank and shortly thereafter went to California. June 29, 1983, he was arrested in Bakersfield for shoplifting a bicycle and assaulting the security officer who stopped him. While being processed on the charges, he told police he was wanted in Florida for the bank robbery. Florida authorities had issued no warrant for Bivona, but, based on Bivona's statements to Bakersfield police, the state attorney in Palm Beach County filed an information against him and asked California authorities to "hold" Bivona for return to Florida. Bivona did not fight extradition. He was incarcerated in California until August 4, 1983, when he was returned to Florida. There is no explanation in the record for the delay between arrest and return to the state. Nor is there an indication of the disposition of the California charges for which he was originally arrested. Florida court records show Bivona's "arrest date" as August 4, and a "speedy trial deadline date" of January 31, 1984.
January 3, 1984, Bivona's counsel filed a motion for discharge pursuant to Florida Rule of Criminal Procedure 3.191(a)(1), claiming the 180-day period in which the state is obligated to bring the defendant to *131 trial began June 29, 1983, when Bivona was arrested in California. After a hearing, the trial judge discharged the defendant. In his order, the judge noted that: "More than merely detaining or holding the Defendant for Palm Beach County, the Bakersfield police actively investigated the instant offense"; "the Defendant was released on the [California] charges and kept in custody on the facts that give rise to these charges"; and recusal of the trial judge the day Bivona had originally been scheduled for trial did not toll the speedy trial time.[1]
On appeal to the Fourth District Court of Appeal, the court ruled that speedy trial time begins to run for a defendant held in custody solely on Florida charges at the time of his out-of-state arrest, rejecting the opposite conclusion reached by the First District in Hawkins. We agree with the position of the First District and quash the decision of the Fourth District sub judice.
The question before us is whether speedy trial time begins to run when a defendant is incarcerated out of state solely on Florida charges. Resolution of the issue lies in interpretation of several subsections of rule 3.191. The Fourth District discussion of the rule and argument follows:
Bivona contends that he was held by the California authorities from June 29, 1983, solely as a result of the Florida criminal charges, and that this holding on a Florida detainer constituted a "taking into custody" within the context of Rules 3.191(a)(1) and (a)(4), Florida Rules of Criminal Procedure, which provide, in relevant part:
Rule 3.191. Speedy Trial
(a)(1). Speedy Trial Without Demand. Except as otherwise provided by this Rule, and subject to the limitations imposed under (b)(1) and (b)(2), every person charged with a crime by indictment or information shall without demand be brought to trial ... within 180 days if the crime charged be a felony, and if not brought to trial within such time shall upon motion timely filed with the court having jurisdiction and served upon the prosecuting attorney be forever discharged from the crime; provided, the court before granting such motion, shall make the required inquiry under (d)(3). The time periods established by this section shall commence when such person is taken into custody as defined under (a)(4)... .
(a)(4). Custody. For purposes of this Rule, a person is taken into custody, (i) when the person is arrested as a result of the conduct or criminal episode which gave rise to the crime charged, or (ii) when the person is served with a notice to appear in lieu of physical arrest.
The State argues that Rule 3.191(b)(1) should apply instead:
(b)(1). Prisoners Outside Jurisdiction. A person who is in federal custody or incarcerated in a jail or correctional institution outside the jurisdiction of this State or a subdivision thereof, [and] who is charged with a crime by indictment or information issued or filed under the laws of this State, is not entitled to the benefit of this Rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of this fact is filed with the court and served upon the prosecutor.
To support its position, the State calls our attention to the case of Hawkins v. State, 451 So.2d 903 (Fla. 1st DCA 1984), which has interpreted Florida Rule of Criminal Procedure 3.191(b)(1), supra, to apply to fugitives who are being held in another jurisdiction solely on the basis of the charges pending in this State. We *132 cannot agree with the majority opinion in Hawkins, and agree rather with the dissent of Chief Judge Ervin in that case as the better-reasoned view.
We suggest that the facts of this case establish the danger of interpreting Rule 3.191(b)(1) as the majority does in Hawkins, rather than as Chief Judge Ervin interprets that rule in his dissent and as we interpret that rule now. Unlike the situation in Hawkins, where apparently the defendant deliberately made himself unavailable for trial during a portion of the 180-day period of time, Bivona cooperated fully with the arresting authorities. He awaited extradition, and did nothing to thwart the State's efforts to bring him to Florida to face the charges against him. Yet he was incarcerated in California for 34 days waiting for the Florida authorities to extradite. Under the Hawkins majority view, the Florida authorities could perhaps have left him there for 60, 90, or even 360 days without a trial. This hardly seems to comport with the intention of the speedy trial rule. When Rule 3.191 is read as a whole, it appears clear that subsection (b)(1), supra, must be interpreted to apply when a defendant is incarcerated in jails outside the jurisdiction of this state on charges pending in the other state. Otherwise, the provisions of subsection (a)(4) of Rule 3.191 become totally meaningless.
Bivona, 460 So.2d at 470-71. The district court's concern for the viability of subsection (a)(4) elevates a general provision of the rule above the specific provision of (b)(1).
The language of (b)(1) is without ambiguity. One who is "incarcerated [outside Florida], and who is charged with a crime by indictment or information issued or filed under the laws of this State, is not entitled to the benefit of this Rule until that person returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of this fact is filed with the court and served upon the prosecutor." "Incarceration" is "[i]mprisonment; confinement in a jail or penitentiary." Black's Law Dictionary 685 (5th ed. 1979). The word "incarcerated" in the rule is unqualified, not restricted in meaning to confinement upon conviction or to confinement for charges in the jurisdiction in which the confinement occurs. Clearer language than this is difficult to envisage. Yet the lower court puts a gloss on it, unwarranted by anything that appears in rule 3.191, by reading into subsection (b)(1) that incarceration outside Florida be on charges pending in the other state before (b)(1) comes into play.
The history of the immediate predecessor to subsection (b)(1) is enlightening. Prior to amendment in 1980, the subsection was designated 3.191(b)(3). Subsection (b)(3) entitled one "imprisoned upon conviction of a crime" outside the state to the right to demand a speedy trial. The old subsection did not provide for application of the rule to any other out-of-state prisoners. Subsections (b)(1) and (b)(2) of the pre-amendment rule provided for speedy trial without or with demand, respectively, for prisoners in Florida. Reading these three subsections in pari materia, it is clear that persons incarcerated outside Florida but not entitled to demand speedy trial under subsection (b)(3) could not avail themselves of the rule in any manner. In revising the rule, the 1980 amendment inserted express language limiting the right to speedy trial without demand, redesignated subsection (a)(1), to persons in custody in Florida or free on bail or recognizance. Subsection (b)(3), redesignated (b)(1), eliminated provision for speedy trial upon demand and was changed to exclude all persons incarcerated out of state from benefit of the rule.[2] The Hawkins court found that these amendments demonstrated an intent by this Court to clearly exclude all persons incarcerated *133 out of state from receiving the benefits of rule 3.191, and we agree that the Hawkins court correctly gleaned our intent.
We also conclude that our interpretation of subsection (b)(1) does not render the definition of custody in subsection (a)(4) meaningless. First, the specific provision of (b)(1) supersedes any general provision of the remainder of the rule, including the definition of custody vis-a-vis speedy trial rights under subsections (a)(1) to (a)(4). Second, the definition of custody in (a)(4) can, in fact, be applied to subsection (b)(1). If "incarceration" in (b)(1) may be read as synonymous with "custody," then, interpolating (a)(4) into (b)(1) and thereby reading the subsections in pari materia, rule 3.191's provision for out-of-state defendants reads: "[W]hen the person is arrested as a result of the conduct or criminal episode which gave rise to the crime charged outside the jurisdiction of this State ... [he] is not entitled to the benefit of this Rule until [he] returns or is returned to the jurisdiction of the court within which the Florida charge is pending and until written notice of this fact is filed with the court and served upon the prosecutor." (Language from (a)(4) underlined, remainder from (b)(1).) There is neither inconsistency nor negation in the interaction between the two subsections.
We also find that application of the clear and unambiguous language of the speedy trial rule to deny the benefit of the rule to prisoners held solely on Florida charges in out-of-state jails does not raise the specter of neglected prisoners languishing indefinitely while awaiting return to Florida. Florida's speedy trial rule is a procedural protection and, except for the right to due process under the rule, does not reach constitutional dimension. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). It is a principle of sovereign grace, and the sovereign is not obliged to extend its grace to those beyond its jurisdiction. Cf. Kronz v. State, 462 So.2d 450 (Fla. 1985) (no right to credit for time served awaiting return to Florida). The federal constitutional right to a speedy trial, on the other hand, would not appear to be limited to the borders of Florida and the considerations enunciated in Barker would offer relief. A prisoner languishing out of state would be able to raise his constitutional speedy trial right upon return to this state.
Also offering protection to incarcerated out-of-state languishers are the provisions of federal and state extradition statutes. 18 U.S.C. § 3182 (1982); Unif. Criminal Extradition Act, 11 U.L.A. 51 (1974) (enacted at §§ 941.01-941.30, Fla. Stat. (1983)); Cal. Penal Code §§ 1548-1556.2 (Deering 1980); enacted in all states, 11 U.L.A. 21 (Cumulative Annual Pocket Part 1985). The federal and state laws provide for discharge of a fugitive if a state is dilatory in seeking return of a fugitive. 18 U.S.C. § 3182 (1982); Unif. Criminal Extradition Act § 17, 11 U.L.A. 262 (1974); § 941.17, Fla. Stat. (1983); Cal. Penal Code § 1552.2 (Deering 1980). That this is not an empty protection is demonstrated by the facts of Hawkins, wherein a New York court initially discharged the defendant more than four months after his arrest when Florida officials failed to forward the necessary extradition papers. Hawkins, 451 So.2d at 904.
Accordingly, we quash the decision of the district court and remand for proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON and SHAW, JJ., concur.
NOTES
[1] The original trial judge received a threatening telephone call prior to Bivona's trial date. A public defender identified the voice on a tape as Bivona's. The public defender's office withdrew from the case because of its involvement in identifying Bivona. New appointed counsel moved for recusal based on the judge's stated belief that Bivona had made the call. No charges were filed against Bivona for the call. Both the trial judge and the district court rejected the state's argument on the tolling issue and the state has not raised the question here.
[2] Eliminating from the rule the right to speedy trial upon demand did not deprive out-of-state convicts of the right, since, as is noted in the Committee Note to the 1980 Amendment, such prisoners still have the benefit of the Interstate Agreement on Detainers, sections 941.45-941.50, Florida Statutes, which provides a statutory right to speedy trial upon demand.