Kenneth Jay HALL, Petitioner,

v.

STATE OF FLORIDA, et al.,
Defendant.

No. 86–319–CIV–ORL–19.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 23, 1987.

Kenneth J. Hall, pro se.

Elizabeth C. Masters, Carolyn Snurkowski, Office of Attorney General, State of Fla., Tallahassee, Fla., Gene White, Asst. Atty. Gen., Daytona Beach, Fla., Mark R. Davis, Asst. Atty. Gen., Richmond, Va., for defendant.

ORDER

FAWSETT, District Judge.

This cause came on for consideration without oral argument on the Motion of Petitioner, Kenneth Jay Hall, for reconsideration of this Court's Order dated September 11, 1987, which partially denied the Petitioner's Writ of Habeas Corpus Petition as it pertains to the Petitioner's pleas of guilty to certain criminal charges in the State of Florida (Doc. No. 27).

## STATEMENT OF FACTS

Petitioner was arrested in Deland, Volusia County, Florida in November of 1981 and subsequently charged with possession of burglary tools, unlawful possession of a controlled substance, failure to stop at the scene of an accident, burglary of a conveyance, and second degree grand theft. Petitioner pled guilty to possession of burglary tools, unlawful possession of a controlled substance, and failure to stop at the scene of an accident. Petitioner was released on bail pending final disposition of the remaining charges of burglary and grand theft and sentencing on the other charges.

Petitioner failed to appear for sentencing or trial, and he later left the State of Florida. Capias warrants were issued for Petitioner's arrest for failure to appear for sentencing and trial.

Currently, Petitioner is serving a prison sentence in the State of Virginia. While awaiting release from the Virginia Department of Corrections, Petitioner notified the State of Florida of his incarceration and his desire for a final disposition of all charges pending against the Petitioner in the State of Florida. The State of Florida has lodged detainers against the Petitioner but has allegedly failed to bring Petitioner to trial for the pending second degree grand theft charge and burglary of a conveyance charge within 180 days. In addition, the State of Florida has failed to secure the Petitioner for sentencing, or sentence Petitioner, on those charges as to which Petitioner entered pleas of guilty.

After the State of Florida denied Petitioner relief under the Interstate Agreement on Detainers Act, Petitioner filed the instant petition seeking dismissal of all pending charges lodged against him by the State of Florida.

The State of Florida moved to dismiss the petition, asserting that Petitioner pled guilty to all charges that were pending against the Petitioner in Volusia County, Florida. Consequently, the State argued, since there were no "untried indictments, informations, or complaints" pending against the Petitioner, the Interstate Agreement on Detainers Act ("IADA") did not apply. In support of this argument the State referred the Court to *Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

In *Carchman v. Nash, supra*, the Supreme Court had occasion to address the meaning of what is an untried indictment, information, or complaint. In that case, the Supreme Court held:

> The language of the Agreement indicates that Art. III applies solely to detainers based on outstanding criminal charges. Article III by its terms applies to detainers based on an "indictment," "information," or "complaint." The most natural interpretation of these terms is that they refer to documents charging an individual with having a criminal offense. This interpretation is reinforced by the adjective "untried," by the requirement that the prisoner be "brought to trial," and by the limitation that the receiving state obtains custody "only for the purpose of permitting prosecution" on the charges.

*Id.* 105 S.Ct. at 3402.

This Court was persuaded by the *Charchman* decision and partially denied the Petitioner's request for relief and held as follows:

> It is clear from the Supreme Court's interpretation of the scope of The Interstate Agreement on Detainers Act that a criminal case which has reached the sentencing stage is not within the purview of the Agreement. A sentencing proceeding does not accuse an individual of having committed a criminal offense in the sense of initiating a prosecution. In fact, at the sentencing stage, the prosecution has been completed, and punishment is all that remains. Although sentencing clearly follows the commission of a criminal offense, it does not include the prisoner being "prosecuted" or brought to trial" for that offense. Sentencing only entails punishment. The prisoner at that stage has already been convicted and adjudicated guilty. Accordingly, a detainer based on a criminal conviction does not come within the plain language

of the Agreement, even though sentencing has not yet occurred.

In the case sub judice, Petitioner admits that he has pled guilty to the possession of burglary tools charge, the unlawful possession of a controlled substance charge, and the failure to stop at the scene of an accident charge. Consequently, these are not "untried" criminal charges. Therefore, the detainer based on these charges does not come within the scope of the Agreement, even though sentencing has not yet occurred.

(Doc. No. 20).

The record before the Court, however, did not indicate whether the Petitioner had pled guilty to the charges of "Burglary of a Conveyance" and "Second Degree Grand Theft." Therefore, the Court Ordered the State of Florida to produce documentary evidence in support of its contention that Petitioner pled guilty to the burglary and grand theft charges. In response to the Court's Order, the State of Florida presented a copy of its nolle prosequi of the pending burglary and grand theft charges described above. (Doc. No. 24).

The Petitioner, however, filed a motion for reconsideration of the following question:

Do the terms "untried indictment, information, or complaint," as used in the IADA, encompass sentencing, thereby imposing an obligation on the State of Florida to sentence the Petitioner in a timely fashion where such state has secured the Petitioner's conviction on certain crimes through a guilty plea but has not sentenced the Petitioner on those crimes?

## MERITS

Section two, Article III, of the Interstate Agreement on Detainers Act is a congressionally sanctioned interstate compact which establishes a procedure for a prisoner incarcerated in one state to demand the speedy disposition of "any untried indictment, information, or complaint" that is the basis of a detainer lodged against him by another state. If the prisoner makes such demand, section two of 18 U.S.C. Appendix III requires the authorities in the other state to bring the person to trial within 180 days, or the court must dismiss the indictment, information, or complaint, and the detainer will cease to be of any force or effect. *See also Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Further, the *IADA* "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction" *Carchman v. Nash,* 105 S.Ct. at 3403 (citing *Cuyler v. Adams,* 449 U.S. 433, 438–442, 101 S.Ct. 703, 706–09, 66 L.Ed.2d 641 (1981)).

The Ninth Circuit Court addressed the very same question, which Petitioner now presents to this Court, in *Tinghitella v. State of California,* 718 F.2d 308 (9th Cir. 1983). On facts similar to those in the case *sub judice,* the Ninth Circuit Court held:

Some courts have stated that IAD does not apply to detainers lodged against prisoners who have been convicted but not sentenced. *See People v. Mahan,* 111 Cal.App.3d 28, 33–34, 167 Cal.Rptr. 428, 430–31 (1980) (dictum) (IAD would not apply to detainer filed for purposes solely of gaining return of defendant for sentencing); *People v. Castoe,* 86 Cal. App.3d 484, 488–90, 150 Cal.Rptr. 237, 238–40 (1978) (dictum) (stating that IAD is inapplicable to request for sentencing, yet no indication in record that detainer had ever been lodged). We do not find the reasoning in these cases to compel the same results here.

The cases place great emphasis on the agreement's repeated references to "untried indictments." *see Mahan,* 111 Cal. App.3d at 34, 168 Cal.Rptr. at 431; *Castoe,* 86 Cal.App.3d at 488–89, 150 Cal. Rptr. at 239–40. It is unclear, however, why this should compel the conclusion that "trial" stops with verdict, short of sentencing. The cases do not address the fact the term "trial" in the speedy trial clause of the Sixth Amendment to the United States Constitution has been construed to include sentencing. *See, e.g., Walsh v. United States,* 423 F.2d 687, 688 (9th Cir.1970). Nor do they

gainsay that the central policy foundations of the IAD support a broad construction of the term "trial," or that the IAD itself provides that it "shall be liberally construed so as to effectuate its purposes." IAD, art. IX (emphasis added). For these reasons, we conclude that the terms "trial" and "final disposition" as used in the IAD encompass sentencing and, therefore, that the IAD imposes an obligation on California to sentence a Texas prisoner in timely fashion where California has secured the conviction of the prisoner in California but he has not been sentenced before his incarceration in Texas on a Texas conviction.

In light of *Carchman v. Nash, supra,* this Court initially found the Ninth Circuit decision in *Tinghitella* to be less than compelling. However, the Court has revisited this issue and is now compelled to vacate its prior Order.

The Supreme Court in *Carchman v. Nash,* stated the purpose of *IADA* as follows:

The Agreement is based on a legislative finding that "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation" Art. I. As has been explained:

"The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is de-

feated." Council of State Governments, Suggested State Legislation, Program for 1957, p. 74 (1956).

*See also Cuyler v. Adams,* 449 U.S. at 449, 101 S.Ct. at 712; *United States v. Mauro,* 436 U.S. [340] at 353, 356, 359–360, 98 S.Ct. [1834] at 1843, 1845, 1846–1847 [56 L.Ed.2d 329 (1978)]. Accordingly, the purpose of the Agreement is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Art. I.

*Carchman v. Nash,* 105 S.Ct. at 3403.

■ Since the *IADA* is a federal statute, it is subject to federal construction. *Charchman v. Nash, supra,* at 3403. Consequently, this Court must decide whether the term "untried", as used in the *IADA,* necessarily includes sentencing, as interpreted by the federal courts.

In *Bradley v. United States,* 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), the Supreme Court interpreted the terms "prosecution" and "trial" as those terms were used in certain federal criminal statutes and for Sixth Amendment right to counsel purposes as follows:

In *Berman v. United States,* 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937), this Court said, "Final Judgment in a criminal case means sentence. The sentence is the judgment. *Miller v. Aderhold,* 288 U.S. 206, 210, 53 S.Ct. 325 [326] 77 L.Ed. 702; *Hill v. United States, ex rel. Wampla,* 298 U.S. 460, 464, 56 S.Ct. 760, 762, 80 L.Ed. 1283 [1936]." *Id.,* at 212, 58 S.Ct., at 166. In the legal sense, a prosecution terminates only when sentence is imposed. *See also Korematsu v. United States,* 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943); *United States v. Murray,* 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928); *Affronti v. United States,* 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955).

*Id.* at 609, 93 S.Ct. at 1154–55. This interpretation of the terms "trial" and "prosecution" has since been followed by the Circuit Courts of Appeal in other cases involving

federal statutory construction. *United States v. Kella,* 490 F.2d 1095, 1096 (2d Cir.1974); *Ganz v. Bensinger,* 480 F.2d 88, 89 (7th Cir.1973); *Walsh v. United States,* 423 F.2d 687, 688 (9th Cir.1970).

In *Pollard v. United States,* 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the Supreme Court was presented with this issue and assumed arguendo that "the sentence is part of the [criminal] trial for purposes of the Sixth Amendment." *Id.* at 361, 77 S.Ct. at 486. Following this rationale, other circuits have found that trial includes sentencing for purposes of the Sixth Amendment. *United States v. Merrival,* 600 F.2d 717 (8th Cir.1979); *United States v. Campisi,* 583 F.2d 692 (3rd Cir. 1978); *United States v. Reese,* 568 F.2d 1246 (6th Cir.1977); *Juarez–Casares v. United States,* 496 F.2d 190 (5th Cir.1974); *Walsh v. United States,* 423 F.2d 687 (9th Cir.1970).

■ Since the United States Supreme Court has construed the term "trial" to include sentencing for purposes of federal statutory construction and the Sixth Amendment, and because the *IADA,* itself, provides that "it shall be liberally construed so as to effectuate its purpose," *IADA,* art. IX, this Court concludes that the terms "untried indictment, information or complaint," as used in the *IADA,* encompass sentencing. Therefore, the Court finds that *IADA* imposed an obligation on the State of Florida to sentence the Petitioner in a timely fashion upon the Petitioner's request that Florida do so.

### RELIEF

■ The *IADA* requires a prisoner to "cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." *IADA,* art. III(a). The notice and request must be

delivered through the official having custody of the prisoner. *Id.,* art. III(b). The record before this Court clearly indicates that Petitioner followed these requirements, thereby bringing the 'timely trial' provisions of the *IADA* into play.[1]

■ It is equally clear from the record that Respondent, State of Florida, has failed to sentence Petitioner, Kenneth Jay Hall, within the 180 day time period required by the *IADA.*

Pursuant to the *IADA,* 18 U.S.C.App., Art. V, (c), the only relief that can be granted by this Court is as follows:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III or article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

*Id.*

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1. The Court's September 11, 1987 Order (Doc. No. 20) granting Respondent, State of Florida's, Motion to Dismiss is hereby VACATED to the extent that the motion was partially granted.

2. The Court's Order of October 2, 1987 (Doc. No. 25) requiring the State of Florida to dismiss with prejudice the indictment, information, or complaint charging Petitioner, Kenneth Jay Hall, in Criminal Case No. 82–1086 Volusia County, Florida, with burglary of a conveyance and second degree grand theft and further dismissing all detainers lodged against the Petitioner

---

1. In this case, Petitioner caused to be delivered on July 27, 1984, to the appropriate Florida authorities a standard form titled "Agreement on Detainers From II", requesting "that a final disposition be made on the following indictments, informations or complaints now pending against [Petitioner]: Detainer filed by Volusia County Sheriff's Dept., Deland, Fla. charge: grand theft, burg. convey., poss. cont. subs., poss. burg. tools, fail to stop accident case: 81–3502–BB, 81–1086–CC; 82–190–BB, 82–3840–BB."

based on said charges shall remain in full force.

3. Respondent, State of Florida, and Uriel Blount, Jr., Circuit Judge in and for Volusia County, Florida, are hereby Ordered to dismiss *with prejudice* the charges of possession of burglary tools, unlawful possession of controlled substance, and failure to stop at the scene of an accident, Criminal Case Numbers 81–3502–BB, 81–3840–CC, and 82–190–BB, Volusia County, Florida, within fifteen (15) days.

4. It is further ORDERED that all detainers lodged against the Petitioner, Kenneth Jay Hall, by the State of Florida, shall cease to be of any force or effect.

5. The Respondent, State of Florida, shall provide proof of compliance with this Court's Order within twenty-five (25) days from the date of this Order.