705 So.2d 575 (1997)
Robert BOGUE, Petitioner,
v.
The Honorable John E. FENNELLY, Respondent.
No. 96-1977.
District Court of Appeal of Florida, Fourth District.
May 28, 1997.
*576 Amanda Maxwell of Law Offices of Amanda Maxwell, Coconut Grove, for petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for respondent.
PARIENTE, Judge.
By writ of prohibition, defendant asserts violations of his statutory and constitutional rights to speedy trial because of the failure of the trial court to dismiss criminal charges to which he had previously pled guilty. We deny the writ of prohibition, finding that the statutory safeguards of the Interstate Agreement on Detainers (IAD), section 941.45, Florida Statutes, do not apply to sentencing detainers where a defendant has fled the state after pleading guilty, but prior to sentencing. Further, defendant's claim that his constitutional rights to due process and to speedy trial have been violated by the state's delay in sentencing him, which was not addressed by the trial court, is premature for us to consider by petition for writ of prohibition because defendant has not yet been returned to this state for sentencing.

BACKGROUND FACTS
Defendant is presently incarcerated in Pennsylvania serving a sentence for criminal charges in that state. This case dates back to March 1, 1981, when defendant was arrested in Florida and charged by information with trafficking in cocaine and using a firearm during the commission of a felony. Defendant pled guilty to both charges on September 23, 1981, but failed to appear for his subsequent sentencing in Martin County.
On June 27, 1989, defendant was arrested in Pennsylvania on new charges of possession with intent to deliver marijuana. Three days later, on June 30, 1989, defendant was rearrested on a warrant, charging him with being a fugitive from the State of Florida. No bail was set for defendant, who was then committed to the Montgomery County Correctional Facility in Pennsylvania to await extradition to Florida. On July 7, 1989, the District Attorney's Office of Montgomery County, Pennsylvania advised the State Attorney's Office in Martin County, Florida to begin extradition proceedings.
On January 14, 1991, defendant was sentenced on the Pennsylvania charges to consecutive sentences totaling five and one-half (5½) to eleven (11) years. At that time, defendant was also awaiting sentencing in a federal case in Arizona. In May 1994, the Arizona federal court sentenced defendant to four years in custody to run concurrently with defendant's Pennsylvania sentence. Only the Florida charges remained unresolved.
On September 26, 1994, defendant submitted formal written notice and requested final disposition of his charges by the State of Florida pursuant to section 941.45, article III(a) and (b) of the IAD. The state has never instituted extradition proceedings and refuses to transfer defendant to Florida for sentencing until he has completed his other sentences. The position of the state is that it is under no obligation to begin proceedings *577 to sentence defendant, who voluntarily fled the state, until he completes his Pennsylvania sentence.
Defendant asserts that the state's refusal to sentence him has prejudiced defendant by preventing a Florida trial court from exercising its discretion to run his Florida sentence concurrently with the Pennsylvania sentence. He also alleges prejudice by claiming that the unresolved status of the Florida charges has affected his ability to participate in certain rehabilitative programs in Pennsylvania for which he would otherwise be eligible. The state maintains that defendant's current predicament is solely a product of his own action in fleeing the state in the first place.

ANALYSIS OF THE IAD
Section 941.45, Florida Statutes (1995), adopts and incorporates into this state's jurisprudence the IAD, articles IIX. The IAD is an intergovernmental compact between the United States and individual cooperating states by which a prisoner in one jurisdiction can seek disposition of detainers filed against him in another jurisdiction. See Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985); Moody v. Corsentino, 843 P.2d 1355, 1367 (Colo.1993); Arizona v. Burkett, 179 Ariz. 109, 876 P.2d 1144, 1146 (Ct.App.1993), cert. denied, 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995). A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." Burkett, 876 P.2d at 1146 (quoting Fex v. Michigan, 507 U.S. 43, 44, 113 S.Ct. 1085, 1087, 122 L.Ed.2d 406 (1993)).[1]
The IAD's policy and purpose is set forth in article I:
The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition ... of any and all detainers based on untried indictments, informations, or complaints.

§ 941.45 (emphasis supplied).
To effectuate this purpose, article III(a) specifies that
whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered ... written notice....
Id. (emphasis supplied). If the case has not been "brought to trial" within 180 days, then the court where the indictment, information, or complaint has been pending "shall" dismiss the case with prejudice so that the detainer ceases to have any force or effect. See id., Art. V(c).

APPLICATION OF IAD TO SENTENCING DETAINERS
This case does not turn on whether a defendant who flees a jurisdiction is entitled to the protection of the IAD.[2] If a defendant *578 flees the state after being charged with a crime, but before pleading guilty, the IAD would provide him with a statutory right to speedy trial upon demand after recapture, State v. Bivona, 496 So.2d 130, 132 n. 2 (1986),[3] because the detainer lodged would be based on an "untried indictment, information, or complaint."
The question here is whether the detainer lodged against a defendant who has fled the state after pleading guilty, but before sentencing, is likewise a detainer based on an "untried indictment, information, or complaint." This case, therefore, turns on questions of statutory interpretation. The simple answer is that where, as here, a defendant has been convicted of a crime as the result of a guilty plea, there is no pending "untried indictment, information, or complaint," even though the defendant has not been sentenced. While defendant has not yet been punished by receiving a sentence, he has admitted his guilt by pleading guilty; he has been convicted of the crimes charged.
The IAD is a federal law subject to federal construction. Carchman, 473 U.S. at 718, 105 S.Ct. at 3402-03. Because the United States Supreme Court has interpreted the IAD in Carchman, we are bound to analyze the statute consistently with Carchman. See Burkett, 876 P.2d at 1146.
In Carchman, the United States Supreme Court confronted the issue of whether a detainer based on an outstanding parole or probation-violation charge triggers the protections of the IAD. It noted that the Third Circuit Court of Appeals had "[d]eclined to adopt a technical interpretation of the relevant language of [a]rt. III, and instead relied on `the broader purposes of the legislation.'" Carchman, 473 U.S. at 723, 105 S.Ct. at 3405.
The Supreme Court rejected the "policy analysis" approach of the third circuit, instead concentrating on the actual language employed in the operative section, article III. It noted that the adjective "untried" would "seem to refer to matters that can be brought to full trial." This interpretation is reinforced by the "requirement [of article III] that a prisoner who requests final disposition of the indictment, information, or complaint `shall be brought to trial within 180 days.'" Id.
Applying principles of statutory construction, the Supreme Court held that the language of the legislative declaration of purpose in article I must be read in the context of articles III and IV, with the specific language of article III controlling over the general language of article I. Id. at 726 n. 4, 105 S.Ct. at 3406 n. 4. By its own terms, article III "does not apply to all detainers, but only to those based on `any untried indictment, information or complaint.'" Id. at 727, 105 S.Ct. at 3407.
It is the phrase "untried indictment, information, or complaint" which defines the reach and scope of the IAD. Id.; United States v. Coffman, 905 F.2d 330, 332 (10th Cir.1990). In contrast to indictments, informations, and complaints, which are all documents that institute charges against individuals, the sentencing process finalizes the disposition of charges which have already been adjudicated. Thus, it follows that detainers based only on unresolved sentencing issues are not included within the scope of the IAD.
Further, article III requires that a defendant be brought to "trial" within 180 days or the charges will be dismissed. A trial is a *579 phase of criminal proceedings distinct from the sentencing phase. See, e.g., Fla. R.Crim. P., section IX (The Trial) and section XIV (Sentence). In addition, our own speedy trial rule, Florida Rule of Criminal Procedure 3.191, which provides for specified time periods in which cases shall be brought to "trial," has never been applied to the sentencing phase.
The time parameters for sentencing are set forth in Florida Rule of Criminal Procedure 3.720, which states that a sentencing hearing shall occur "[a]s soon as practicable after the determination of guilt and after the examination of any presentence reports." While delays in sentencing may violate constitutional due process rights of defendants, see Clark v. State, 572 So.2d 1387 (Fla.1991), the delays are not covered by any statutorilybestowed or rule-based speedy trial right.[4]
Giving the terms "trial" and "untried indictment" their commonly-understood meanings comports with basic principles of statutory construction. As explained by our supreme court:
[T]he plain meaning of statutory language is the first consideration of statutory construction. Only when a statute is of doubtful meaning should matters extrinsic to the statute be considered in construing the language employed by the legislature.
Capers v. State, 678 So.2d 330, 332 (Fla.1996) (citations omitted); see also Skinner v. Skinner, 678 So.2d 512, 513 (Fla. 4th DCA 1996) (primary rule of statutory construction is "courts should not depart from plain and unambiguous language of statute").
The vast majority of jurisdictions, including all of the state appellate courts considering the issue, have concluded that sentencing detainers do not trigger the safeguards of the IAD. Moody, 843 P.2d at 1369-72; Burkett, 876 P.2d at 1140.[5] These courts have also given the terms "untried indictments" and "trial" their commonly accepted and understood meanings. Once a defendant has pled guilty, the defendant no longer has a right to a "trial"; therefore, there is no pending "untried" indictment. See, e.g., Coffman; Moody; Burkett. By pleading guilty, a defendant waives the right to a jury trial, and the trial court's acceptance of the plea acts as a conviction. Moody, 843 P.2d at 1370.

ANALYSIS OF MINORITY VIEW
Only two reported decisions have interpreted the IAD to include sentencing detainers. See Hall v. State, 678 F.Supp. 858 (M.D.Fla.1987); Tinghitella v. California, 718 F.2d 308, 312 (9th Cir.1983). The dissent adopts the view expressed in Hall, which followed Tinghitellathe only federal appellate case holding that the phrase "untried indictment, information, or complaint" within the meaning of the IAD extends to sentencing. The rationale for the Hall/Tinghitella analysis is twofold.
First, because all federal courts considering the issue have held that sentencing is included within the ambit of the Sixth Amendment right to speedy trial, the courts in Hall and Tinghitella reasoned that the term "trial" within the IAD should likewise *580 be interpreted expansively.[6] Assuming arguendo that sentencing is in fact part of the Sixth Amendment right to speedy trial, it is a leap to interpret the term "trial" within a statute in a similarly-expansive manner. Also, neither Hall nor Tinghitella focused on the operative language of the IAD, which is not "trial" but detainers based on any "untried indictment, information, or complaint."
Second, Hall and Tinghitella held that the purposes of the IAD, which include rehabilitation, could best be fulfilled by expansively interpreting the statutory language. Tinghitella, however, was decided before the United States Supreme Court decision in Carchman. By focusing on policy considerations which might be served by a broad construction of the terms employed, the dissent here interprets the statute in a manner inconsistent with Carchman, which rejected the "policy analysis" approach.
Further, even if we were to engage in an analysis of the legislation's purposes, these purposes are not substantially furthered by an all-inclusive interpretation. As Carchman noted, the practice of filing detainers based on meritless criminal charges was one of the motivating factors leading to the adoption of the IAD. This form of abuse, the Supreme Court reasoned, did not generally occur in the context of probation-violation detainers where the defendant's guilt has already been determined. See Carchman, 473 U.S. at 730-31, 105 S.Ct. at 3408-09.
There is even less reason to be concerned with detainers based on meritless criminal charges where a defendant has already pled guilty and awaits sentencing. By pleading guilty, the defendant has already admitted the truth of the charges and may not relitigate the factual issue of guilt. As noted by the New Mexico Supreme Court:
As in the case of the probation violation detainer in Carchman, however, the fear of filing meritless detainers is not present here. A sound basis supported the filing of this detainer. Defendant here had been convicted, and he had failed to appear for sentencing. The detainer, therefore, was unquestionably legitimate.
New Mexico v. Sparks, 104 N.M. 62, 716 P.2d 253, 256 (Ct.App.), cert. denied, 103 N.M. 798, 715 P.2d 71 (1986).
Article I specifically refers to the "expeditious and orderly disposition" of detainers as a purpose of the IAD. As the Supreme Court further noted in Carchman, a defendant's interest in the "expeditious and orderly disposition" of outstanding charges, where a delay would impair the ability of the defendant to defend himself, is "unlikely to be strongly implicated in the probation-violation detainer context." Carchman, 473 U.S. at 733, 105 S.Ct. at 3410. An "expeditious and orderly disposition" of outstanding charges likewise has little application to a defendant who has pled guilty and awaits sentencing because it is no longer necessary to prepare any defense to the charges.
Article I also refers to the "uncertainties" which obstruct programs of prisoner treatment and rehabilitation "produced by outstanding charges." As pointed out in Moody, the only remaining uncertainty for a defendant who has been convicted is the length of the sentence. Moody, 843 P.2d at 1371. In short, a "prisoner faces fewer adverse effects when a detainer arises from a pending sentence than when it is based on an untried charge." Id. As further noted in Sparks:

*581 Additionally, the uncertainties which confront a prisoner who has a detainer based on an outstanding indictment, information or complaint are much graver than those arising from an outstanding sentence. In the case of a prisoner affected by a detainer on an untried charge, invocation of the IAD procedures may result in a not guilty verdict totally displacing the detainer.
716 P.2d at 256-57.
In our case, defendant is certain that he has been convicted of two felony offenses. His major complaint is that he is being deprived of the possibility of concurrent sentences. This was never a purpose envisioned by the IAD. Whether or not the purpose of the IAD would also be advanced by applying its protections to sentencing detainers involve "questions of legislative judgment." Carchman, 473 U.S. at 734, 105 S.Ct. at 3410.

CONCLUSION
In short, the IAD is a statutory procedural protection and not a constitutional right. While, as the dissent points out, unresolved sentencing issues may affect rehabilitation, this concern cannot cause us to ignore the actual statutory language, which does not apply to all detainers. See Moody, 843 P.2d at 1369.
If Congress had intended that the IAD be applied expansively, it could have used a phrase such as "detainers based on unresolved criminal charges." Instead of utilizing the term "trial" to set the parameters, Congress could have utilized the term "final disposition."
As our supreme court stated in an analogous context in Bivona:
[A]pplication of the clear and unambiguous language of the speedy trial rule ... does not raise the specter of neglected prisoners languishing indefinitely while awaiting return to Florida. Florida's speedy trial is a procedural protection and, except for the right to due process under the rule, does not reach constitutional dimension. It is a principle of sovereign grace, and the sovereign is not obliged to extend its grace to those beyond its jurisdiction.... A prisoner languishing out of state would be able to raise his constitutional speedy trial right upon return to this state.

Bivona, 496 So.2d at 133 (citations omitted). Likewise, defendant here may not avail himself of a statutory right which does not apply to sentencing detainers.
As to defendant's claimed constitutional violations, we have concluded that consideration of this issue is premature because the state has not yet sought to have defendant sentenced in Florida. Id. The constitutional considerations may be addressed when defendant is returned to this state for sentencing. At that time defendant will be entitled to raise, without prejudice, whether the delay by the state in sentencing him violated his constitutional rights to speedy trial and/or due process of law.
This is consistent with the purpose of a petition for writ of prohibition, which is the appropriate remedy to prohibit a trial court from proceeding against the accused after a motion for discharge for lack of speedy trial has been erroneously denied. See Trainer v. Broome, 666 So.2d 1019, review denied, 675 So.2d 119 (Fla.1996); Vallieres v. Grossman, 573 So.2d 196 (Fla. 4th DCA 1991); see generally Sherrod v. Franza, 427 So.2d 161 (Fla.1983).
Here, defendant has not yet been returned to Florida. Thus, there are no proceedings to prohibit and no jurisdiction to exceed. Cf. Subervi v. Miller, 555 So.2d 452 (Fla. 5th DCA 1990) (entertaining, but denying, petition for writ of prohibition which raised challenge based on the IAD).
Accordingly the writ of prohibition is denied.
SHAHOOD, J., concurs.
STEVENSON, J., dissents with opinion.
STEVENSON, Judge, dissenting.
I respectfully dissent. The issue raised by Bogue's petition is whether an information remains "untried" within the meaning of the IAD where a guilty plea has been entered but the sentence has not yet been imposed. In Hall v. State, 678 F.Supp. 858, 862 (M.D.Fla.1987), the court answered this question in the affirmative. To resolve the *582 issue, the Hall court, taking its lead from Tinghitella v. California, 718 F.2d 308 (9th Cir.1983), looked to Sixth Amendment law and found that the term "trial" had been defined to include sentencing. See, e.g., United States v. Campisi, 583 F.2d 692 (3d Cir.1978)(assuming that sentencing is part of trial for Sixth Amendment purposes and holding that delay in sentencing did not violate defendant's right to speedy trial); United States v. Reese, 568 F.2d 1246 (6th Cir.1977)(finding that delay in sentencing may violate Sixth Amendment right to speedy trial, but that under the circumstances delay was reasonable and did not violate defendant's rights); JuarezCasares v. United States, 496 F.2d 190 (5th Cir.1974)(holding that sentencing is part of trial for Sixth Amendment purposes).
Since "trial" includes sentencing, the court in Hall concluded that under the language of the IAD an indictment, information, or complaint remains "untried" until after sentence is imposed. The court then noted that this interpretation is consistent with the IAD's language providing for liberal construction to effectuate the compact's purpose of encouraging the expeditious disposition of outstanding foreign charges with the added result of decreasing uncertainty and thereby facilitating prisoner rehabilitation. See IAD, art. IX, § 941.45, Fla. Stat. (1995). Based upon this rationale, the court held that the IAD imposed an obligation on the State of Florida to timely sentence the petitioner upon his request that Florida do so. Hall, 678 F.Supp. at 862-63. Accord Tinghitella v. California, supra.
I have considered the majority's review of the cases in other jurisdictions, which have examined the issue and reached a contrary result. Nevertheless, I dissent from the majority opinion because I agree with the Hall and Tinghitella analyses. The meaning of "untried information" is not as plain as the majority suggests. Therefore, it is appropriate to review the context of the statute to discern what the legislature intended. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454-55 (Fla.1992). The very language of the IAD states that its purpose is to encourage the expeditious "disposition" of outstanding charges. In a criminal case, sentencing is the sine qua non of the entire judicial procedure, unless of course, the defendant is acquitted. Completion of the guilt phase of a criminal case does not "dispose" of the issues raised by the State's filing of the information. The sentencing phase of a criminal trial is often longer and more complex than the guilt phase of the trial. Indeed, without sentencing, the information has only been partially tried, a result the IAD specifically condemns. For these reasons, I believe Hall and Tinghitella to be the better approach.
NOTES
[1] The record submitted by petitioner does not provide evidence of an actual detainer filed by the Martin County State Attorney's office. However, respondent has not raised the issue of the absence of a detainer, and, in its order, the trial court assumed a detainer had been filed. The record does reveal that the Martin County Sheriff's office certified as a true and correct copy, on June 28, 1989, the 1982 bench warrant issued against petitioner for his failure to appear for sentencing. Petitioner was rearrested in Pennsylvania, based on this copy of the bench warrant, on June 30, 1989. This warrant thus became the functional equivalent of a detainer. See United States v. Ford, 550 F.2d 732, 736 n. 5 (2d Cir.1977) (warrants commonly used as detainers), aff'd sub nom. United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).
[2] Federal appellate courts have recognized that defendants who flee the jurisdiction do not waive their constitutional right to speedy trial. The fact that a defendant is in part responsible for the delay in bringing the case to trial is one part of the analysis set forth in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a violation of a defendant's Sixth Amendment right to speedy trial has occurred. See Moody v. Corsentino, 843 P.2d 1355, 1364 n. 13 (Colo.1993), and cases cited therein.
[3] In State v. Bivona, 496 So.2d 130, 132 n. 2 (1986), our supreme court recognized that section 941.45 would apply to a prisoner who fled the jurisdiction after committing the crime but before pleading guilty:

Eliminating [from Florida's speedy trial rule] the right [of persons incarcerated out of state] to speedy trial upon demand did not deprive out-of-state convicts of the right, since, as noted in the Committee Note to the 1980 Amendment [to Fla. R.Crim. P. 3.191], such prisoners still have the benefit of the Interstate Agreement on Detainers, sections 941.45-941.50, Florida Statutes, which provides a statutory right to speedy trial upon demand. See § 941.45, Fla. Stat. (1995).
[4] In Lee v. State, 487 So.2d 1202, 1203 (Fla. 1st DCA 1986), the first district held that sentencing does not fall within the federal constitutional speedy trial guarantee. Rather, delays in sentencing are subject to a due process analysis. This is in contrast to the federal appellate courts that have considered the issue and have concluded that the Sixth Amendment right to speedy trial includes sentencing. See State v. Burkett, 179 Ariz. 109, 876 P.2d 1144, 1144 (Ct.App.1993), and cases cited therein; see also infra note 6.
[5] See, e.g., Utah v. Leyva, 906 P.2d 910 (Utah.Ct. App.1995); New Jersey v. Miller, 277 N.J.Super. 122, 649 A.2d 94, 96 (Ct.App.Div.1994), cert. denied, 142 N.J. 449, 663 A.2d 1356 (1995); Tennessee v. Hill, 875 S.W.2d 278, 282 (Tenn.Crim. App.1994); Minnesota v. Lewis, 422 N.W.2d 768, 770 (Minn.Ct.App.1988); Washington v. Barefield, 110 Wash.2d 728, 756 P.2d 731, 733 (1988), criticized on other grounds, Washington v. Morris, 126 Wash.2d 306, 892 P.2d 734 (1995); New Mexico v. Sparks, 104 N.M. 62, 716 P.2d 253, 255-57 (Ct.App.), cert. denied, 103 N.M. 798, 715 P.2d 71 (1986); Ohio v. Barnes, 14 Ohio App.3d 351, 471 N.E.2d 514, 516 (1984); California v. Mahan, 111 Cal.App.3d 28, 168 Cal.Rptr. 428, 430-31 (Dist.Ct.App.1980); Michigan v. Barnes, 93 Mich.App. 509, 287 N.W.2d 282, 283-84 (1979); New York v. Nosek, 236 A.D.2d 892, 654 N.Y.S.2d 63 (N.Y.1997); New York v. Randolph, 85 Misc.2d 1022, 381 N.Y.S.2d 192, 194 (App.Div.1976).
[6] The United States Supreme Court has never expressly ruled on whether the Sixth Amendment right to speedy trial encompasses sentencing. In Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the Supreme Court was presented with the issue and assumed arguendo that "the sentence is part of the trial for purposes of the Sixth Amendment." Id. at 361, 77 S.Ct. at 486. Following Pollard, the lower federal courts have accepted the proposition that a criminal defendant's right to speedy trial under the federal constitution extends through the sentencing phase of a prosecution. See Burkett v. Fulcomer, 951 F.2d 1431 (3d Cir.1991), cert. denied, 505 U.S. 1229, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992); Burkett v. Cunningham, 826 F.2d 1208, 1220 (3d Cir.1987); Perez v. Sullivan, 793 F.2d 249, 252-53 (10th Cir.), cert. denied, 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986); United States v. Merrival, 600 F.2d 717 (8th Cir. 1979); United States v. Campisi, 583 F.2d 692 (3d Cir.1978); United States v. Reese, 568 F.2d 1246 (6th Cir. 1977); Juarez-Casares v. United States, 496 F.2d 190 (5th Cir.1974); Walsh v. United States, 423 F.2d 687 (9th Cir.1970). But see supra note 4.