## UNITED STATES of America, Plaintiff–Appellee,

v.

## Vernon Klaire COFFMAN, Defendant–Appellant.

### No. 89–3214.

United States Court of Appeals, Tenth Circuit.

June 11, 1990.

Stephen M. Joseph, of Joseph, Robison & Anderson, P.A., Wichita, Kan., for defendant-appellant.

Emily B. Metzger (Benjamin L. Burgess, Jr., U.S. Atty., with her on the brief), Asst. U.S. Atty., Wichita, Kan., for plaintiff-appellee.

Before TACHA and SETH, Circuit Judges, and KANE,* District Judge.

TACHA, Circuit Judge.

This is an appeal from the order of the district court, 714 F.Supp. 478, denying defendant Vernon Coffman's motion to correct sentence pursuant to 28 U.S.C. section 2255. Coffman contends that the district court erred in failing either to dismiss the indictment for alleged violations of the Interstate Agreement on Detainers or to order an evidentiary hearing on his ineffective assistance of counsel claim. We affirm.

### I.

Coffman was indicted by a federal grand jury in 1987 on two counts of making false written statements to a licensed firearms dealer in connection with the acquisition of firearms and two counts of unlawfully receiving firearms that had traveled in interstate commerce, in violation of 18 U.S.C. section 922(a)(6) and 18 U.S.C. section

* The Honorable John L. Kane, Jr., District Judge, United States District Court for the District of Colorado, sitting by designation.

922(h)(1), respectively. At the time the indictment was issued, Coffman was incarcerated in the Pratt County Jail pending trial on state criminal charges. On August 2, 1985, the United States marshal lodged a detainer with the Pratt County sheriff on the federal charges. After release from confinement, Coffman was arraigned on the federal charges and released on bond.

After his arraignment but before his federal trial, Coffman was sentenced on the state criminal charges. The state court sentenced Coffman to the custody of the Kansas State Industrial Reformatory (KSIR). On September 16, 1985, Coffman was transferred to federal custody and appeared for a change of plea hearing on September 22, 1985, at which time he pleaded guilty to counts I and III of the federal indictment. Coffman was then returned to KSIR on September 29th, pending sentencing on the federal offenses. On November 20, 1986, Coffman was again transferred to federal custody for sentencing. The district court sentenced him to five years on count I and five years on count III, with the two sentences to run concurrently. Following sentencing, Coffman was returned immediately to KSIR.

Coffman filed two motions to vacate, set aside or correct sentence with the federal district court. In an amendment to the second motion, Coffman contended that the United States had violated the anti-shuttling provisions of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. App. 2, § 2, Art. IV(e), by returning him to state custody at KSIR before sentencing. Coffman also contended that he was deprived of effective assistance of counsel when his trial counsel failed to raise the IAD violation. Coffman demanded an evidentiary hearing on the ineffective assistance of counsel claim. The district court denied both motions, and this appeal followed.

## II.

■ The issue before us is the narrow question of whether "trial" in the IAD anti-shuttling provisions includes sentencing. Coffman contends that it does, relying on the Ninth Circuit's case of *Tinghi-*

*tella v. California,* 718 F.2d 308 (9th Cir. 1983) (per curiam). We disagree with *Tinghitella* and hold that "trial" does not include sentencing for purposes of the IAD anti-shuttling provisions.

The IAD is a compact among 48 states, the United States, and the District of Columbia. Its purpose is

> to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purposes of this agreement to provide such cooperative procedures.

IAD Art. I, 18 U.S.C.App. 2, § 2, Art. I. To effectuate these purposes, the IAD provides for two methods of disposing of "untried indictments, informations, or complaints" and their related detainers. The first method, invoked by the prisoner, is a request for final disposition under article III. The second method, invoked by a party state, is a request for temporary custody or availability under article IV.

In this case, the United States, as a party state under the IAD, brought a request under article IV(a), which states:

> The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated....

IAD Art. IV(a), 18 U.S.C.App. 2, § 2, Art. IV(a). Coffman, who was then serving time in Kansas, a party state to the IAD, *see* Kan.Stat.Ann. § 22–4401 (1988), was transferred to federal custody for trial pursuant to articles IV and V. After trial, but

before sentencing, Coffman was retransferred to Kansas custody. He was then returned to federal custody for sentencing.

Coffman contends that these transfers violated the anti-shuttling provision of IAD article IV(e), which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

IAD Art. IV(e), 18 U.S.C.App. 2, § 2, Art. IV(e). Coffman asserts that the term "trial" in article IV(e) includes sentencing, *see Tinghitella,* 718 F.2d at 311, and that because he was returned to Kansas custody before sentencing, there was no trial on the indictment as required by article IV(e). The Ninth Circuit reached its result in *Tinghitella* by analogizing the term "trial" in the IAD to "trial" under the sixth amendment, which includes sentencing. *Id.* at 311 (citing *Walsh v. United States,* 423 F.2d 687, 688 (9th Cir.1970)). We find no authority for this analogy.

The express statutory framework of the IAD refutes the appropriateness of the Ninth Circuit's analogy. Applying the statutory framework, we agree with the Ninth Circuit that the IAD's use of the term "final disposition" includes sentencing. The use of the term "final disposition," however, when juxtaposed against the use of the word "trial" makes clear that the IAD differentiates between the trial phase of a proceeding and all post-trial procedures, including sentencing. *But see Carchman v. Nash,* 473 U.S. 716, 744, 105 S.Ct. 3401, 3415, 87 L.Ed.2d 516 (1985) (Brennan, J., dissenting) ("The term 'trial' is plainly used in the [IAD] to represent the broader concept of 'final disposition.'"); *Tinghitella,* 718 F.2d at 311 ("trial" and "final disposition" in IAD encompass sentencing).

The IAD draws a clear distinction between "disposition," "final disposition," and "prosecution" on the one hand and

"trial" on the other. Disposition refers to the final determination of charges. *See* IAD Art. I, 18 U.S.C.App. 2, § 2, Art. I ("the purpose of this agreement to encourage the expeditious and orderly disposition of such charges"). Final disposition, primarily used in the context of article III, specifically includes imposition and service of sentence. *See* IAD Art. III(e), 18 U.S.C. App. 2, § 2, Art. III(e). Similarly, prosecution refers to the total proceedings based on an "untried indictment, information, or complaint." *See* IAD Art. V(d), 18 U.S.C. App. 2, § 2, Art. V(d) ("[T]emporary custody ... shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer."). In articles III(d) and IV(e), however, the drafters of the IAD chose to use the term "trial" rather than "disposition," "final disposition," or "prosecution." In our view this change in terminology reflects a decision to limit the scope of the anti-shuttling provisions to pre-conviction transfers. If the drafters had wished to extend the IAD's anti-shuttling provisions to incidences occurring after trial but before sentencing, they could have used the term "disposition," "final disposition," or "prosecution." They did not. Isolating the sentences containing the word "trial," as the Ninth Circuit and *Carchman* dissent apparently did, renders meaningless the use of the words "disposition," "final disposition," and "prosecution" in the other articles of the IAD. We therefore hold that trial under the IAD's anti-shuttling provisions does not include sentencing.

Further, we reject equating the anti-shuttling provision's use of the word "trial" with the use of the words "untried indictment, information, or complaint." The "untried indictment, information, or complaint" language defines the reach and scope of the IAD, while the term "trial" establishes the limits of the anti-shuttling provision's application to cases within the scope of the IAD. *Cf. Carchman,* 473 U.S. at 724–26, 105 S.Ct. at 3405–06 (IAD's reach limited to charges based on "untried indictments, informations, or complaints").

This distinction is clearly borne out by the language and structure of the IAD. On the one hand, the IAD by its express terms authorizes proceedings that "encourage the expeditious and orderly *disposition of such charges* and determinations of the proper status of any *and all detainers based on untried indictments, informations, or complaints*." IAD Art. I, 18 U.S.C.App. 2, § 2, Art. I (emphasis added). The reference to "untried indictments, informations, or complaints" throughout the IAD refers back to this basic enabling language authorizing the disposition of charges based on or related to untried indictments, informations, and complaints. The use of the term "trial" in article IV(e), on the other hand, makes clear it is a limitation on the application of the anti-shuttling provision. "Trial" is simply not synonymous with "untried indictment, information or complaint."

Our interpretation gives full weight to the purpose of the IAD to facilitate the interjurisdictional transfer of prisoners and to promote prisoner rehabilitation. *See* IAD Art. I, 18 U.S.C.App. 2, § 2, Art. I. Transferring a prisoner after trial but before sentencing does not implicate the prisoner rehabilitation concerns animating the IAD to the same degree as pre-trial transfers. The IAD is designed to reduce prisoner uncertainty caused by untried indictments, informations, or complaints that may have little basis. *See Carchman v. Nash*, 473 U.S. 716, 729–30, 105 S.Ct. 3401, 3408–09, 87 L.Ed.2d 516 (1985). Although "[a] prisoner with foreknowledge of a time certain for imprisonment in the receiving state ... presumably will more easily undergo rehabilitation than one with knowledge merely of a range of possible sentences," *Tinghitella*, 718 F.2d at 311 n. 5, "[t]he uncertainty caused by the delay in sentencing is minimal when compared with the uncertainty resulting from untried charges," *People v. Housewright*, 83 Mich. App. 346, 268 N.W.2d 401, 403 (1978). Certainly the prisoner's guilt or innocence on pending charges is a major factor considered by state parole authorities.

We note that transfers for purposes of sentencing are frequently brief and present minimal interruptions in rehabilitative programs. Indeed, Coffman was removed from KSIR for less than one day for his sentencing proceeding. We decline to adopt a mechanical reading of the IAD that would require a receiving state to retain custody of the prisoner until the completion of sentencing. Such retained custody, which might last for a period of several weeks or months, could seriously disrupt the prisoner's rehabilitative program in the sending state. Given the IAD's policy of facilitating rehabilitation and the diminished uncertainty resulting from unsentenced versus untried charges, we refuse to hold that trial includes sentencing and require receiving states to retain custody at the expense of the prisoner's rehabilitation program in the sending state.

Many of the state courts interpreting the IAD have reached similar results. Because the IAD is a compact among the party states created to promote cooperation in resolving interjurisdictional custody matters, we accord the view of the courts of the party states substantial weight in construing the agreement's provisions. Two such courts have held that "trial" under the IAD does not include sentencing, *see Housewright*, 268 N.W.2d at 403–04; *State v. Lewis*, 422 N.W.2d 768, 771–72 (Minn.Ct. App.1988), while several courts have held that the IAD has no application to sentencing at all, *see People v. Castoe*, 86 Cal. App.3d 484, 150 Cal.Rptr. 237, 238–39 (1978); *People v. Barnes*, 93 Mich.App. 509, 287 N.W.2d 282, 283–84 (1979); *State v. Sparks*, 104 N.M. 62, 716 P.2d 253, 255–57 (Ct.App.), *cert. denied*, 103 N.M. 798, 715 P.2d 71 (1986); *People v. Randolph*, 85 Misc.2d 1022, 381 N.Y.S.2d 192, 194 (Sup. Ct.1976); *State v. Barnes*, 14 Ohio App.3d 351, 471 N.E.2d 514, 516–17 (1984); *State v. Barefield*, 110 Wash.2d 728, 756 P.2d 731, 733–34 (1988) (en banc), *rev'g State v. Barefield*, 47 Wash.App. 444, 735 P.2d 1339, 1343–45 (1987).

### III.

We hold that "trial" in the IAD anti-shuttling provisions does not include sentencing. Accordingly, we do not reach Coff-

man's ineffective assistance of counsel claim and his request for an evidentiary hearing on that issue because they are based upon Coffman's counsel's failure to raise the alleged IAD violation. Because there was no such violation, however, the district court did not err in refusing to dismiss the indictment or otherwise grant Coffman's section 2255 motion.

Appellant's motion to strike portions of the government's brief for citing facts not in the record and an unpublished Tenth Circuit opinion in violation of 10th Cir.R. 36.3 is GRANTED. The judgment of the district court is AFFIRMED.