277 N.J. Super. 122 (1994)
649 A.2d 94
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BARRY MILLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1994.
Decided November 15, 1994.
*124 Before Judges STERN, KEEFE and HUMPHREYS.
Susan L. Reisner, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the letter brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Terry Bogorad, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant appeals from the dismissal of his petition for post-conviction relief. The background is set out by United States District Court Judge Dickenson R. Debevoise in dismissing defendant's *125 petition for habeas corpus for failure to exhaust State remedies:
On January 23, 1985, Miller was sentenced to a six to twelve year term of imprisonment for armed robbery in New York State. He was thereafter placed in a federal penitentiary, the Metropolitan Correction Center [hereafter "M.C.C."] in New York to serve his sentence.
During the summer of 1985, Miller was indicted in New Jersey pursuant to Passaic County Indictment Nos. 992-84K and 354-85D for armed robbery and other related offenses. Negotiations subsequently took place between Passaic County authorities and counsel for Miller. As a result of these negotiations a plea agreement was reached between the parties. On September 9, 1985, an application to transfer custody of Miller to New Jersey in order to have him appear before the state court was granted by Judge Jack Weinstein of the United States District Court for the Eastern District of New York. Miller as thereafter moved to the Passaic County Jail.
A plea hearing took place in the Superior Court of New Jersey in Passaic County on November 19, 1985. At the hearing, Miller agreed to plead guilty to first degree robbery in exchange for the State's dismissal of the other charges in the indictment. The State would also recommend a maximum custodial sentence of fifteen years, with seven and a half years of parole ineligibility, and advise that two and a half years of the sentence should run concurrently with the sentence then being served in New York. Questioned by the court, Miller confirmed the voluntary nature of his plea and his understanding of the charge. Miller also confirmed his satisfaction with counsel's services and reaffirmed his participation in the robbery to which he was pleading guilty.
The plea was provisionally accepted by the court pending submission of a presentence report. The State Assistant Prosecutor at the hearing, Bruno Mongiardo, stated that he understood that Miller wished to return to the M.C.C. and be brought back to New Jersey for the sentencing date. He indicated that this arrangement was acceptable with the United States Attorney's Office in New York, and that it would prevent the court from being pressed for an early sentencing date. The court inquired whether this was indeed what Miller wanted, to which he responded "yes". The court proceeded to set sentencing for January 14, 1986 and directed that Miller be remanded to the M.C.C. until the sentencing date. On January 14, 1986, Miller was sentenced to seven and a half to fourteen years under the terms of the plea agreement entered into at the hearing on November 19, 1985.
Defendant filed his State petition for post-conviction relief in August 1992, over six and-one-half years after the judgment of conviction was entered on January 14, 1986. He nevertheless contends that the petition is not time-barred because the delay was attributable to "excusable neglect," and that the Interstate Agreement on Detainers ("IAD"), N.J.S.A. 2A:159A-1 et seq., required dismissal of the case before sentencing.
*126 Defendant was returned to New Jersey under the IAD[1] for the 1985 plea and contends that, because he was "returned to the original place of imprisonment," before sentencing, even at his request,[2] further proceedings thereafter were barred under Article IV(e), which is codified in New Jersey as N.J.S.A. 2A:159A-4(e). (Article IV of the IAD embodies the provisions regarding requests for disposition by the prosecuting authority, whereas Article III concerns the requests for disposition by the defendant.)
N.J.S.A. 2A:159A-4(e) provides:
[i]f trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) [N.J.S.A. 2A:159A-5(e)] hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
Defendant argues that "the anti-shuttling provision of Article IV(e) encompasses sentencing, meaning that a state which has taken custody of a prisoner for purposes of resolving an untried indictment also must sentence that prisoner ... before returning him to the original jurisdiction of imprisonment." Defendant relies on Tinghitella v. State of California, 718 F.2d 308, 311 (9th Cir.1983), and Walker v. King, 448 F. Supp. 580, 588 (S.D.N.Y. 1978).
However, those cases were decided before the 1985 United States Supreme Court decision which held that Article III of the IAD does not "apply to probation violation detainers," and applies only to "untried indictments, informations or complaints." Carchman v. Nash, 473 U.S. 716, 725, 734, 105 S.Ct. 3401, 3406, 3411, 87 L.Ed.2d 516, 524, 529 (1985). Since Carchman was decided, federal and state courts appear to uniformly conclude that the *127 IAD does not apply to either Article III or Article IV cases following disposition by plea or verdict. See, e.g., United States v. Coffman, 905 F.2d 330, 332 (10th Cir.1990); United States v. Currier, 836 F.2d 11, 16 (1st Cir.1987) (Article IV(e) contention rejected because the IAD does not apply "to those who have been convicted but not yet sentenced"); Moody v. Corsentino, 843 P.2d 1355, 1369 (Colo. 1993) (plurality opinion); State of Minnesota v. Lewis, 422 N.W.2d 768, 771-72 (Minn. Ct. App. 1988) (term "trial" in the IAD does not include sentencing); State of Washington v. Barefield, 110 Wash.2d 728, 756 P.2d 731, 733-4 (1988) (the IAD does not apply to sentencing detainers). In Coffman, defendant was transferred from a Kansas reformatory to federal custody, pled guilty to federal charges and was returned to the Kansas reformatory pending federal sentencing. His challenge to the federal sentencing under Article IV(e) was rejected by the Tenth Circuit, which disagreed with Tinghitella and held "that `trial' does not include sentencing for purposes of the IAD anti-shuttling provisions." Coffman, supra, 905 F.2d at 331. The court stated that because Article IV(e), like Article III(d), referred to "trial," the drafters of the IAD evidenced an intent not "to extend its anti-shuttling provisions to incidences occurring after trial but before sentencing." Id. at 332.
As the IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl 3," it "is a federal law subject to federal construction." Carchman v. Nash, supra, 473 U.S. at 719, 105 S.Ct. at 3503, 87 L.Ed.2d at 520. See also Coffman, supra, 905 F.2d at 333 (according the view of state courts "substantial weight in construing the agreement's provisions"). In addition to the reference in Article IV(e) to "trial," we note that Article IV(a), like Article III(a), relates only to requests for disposition of an "untried indictment information or complaint." See N.J.S.A. 2A:159A-3(a), -4(a). As a result, we adopt the recent decisions cited previously in this opinion, which hold that Article IV does not apply to a post-plea transfer.
*128 We are also satisfied that defendant waived any otherwise cognizable claim under the IAD. After defendant's guilty plea was accepted on November 19, 1985, the following colloquy occurred:
THE COURT: All right. The plea will be provisionally accepted pending a presentence report.
[PROSECUTOR]: Judge; as far as the sentencing date is concerned, we perhaps can get a date some time in January.
I understand the defendant is desirous of returning back to the MCC in New York and being brought back for sentencing. We have just contacted ...
THE COURT: You have no problem?
[PROSECUTOR]: We just spoke with Assistant U.S. Attorney, Charles Rose about two minutes ago, and he indicated that there would be no problem with that. That they were willing to take Mr. Miller back to MCC and then they will return him for sentencing. So that we're not pressed for an early sentencing date.
I believe that is what he wanted; is that correct?
THE DEFENDANT: Excuse me?
[DEFENSE COUNSEL]: Yes.
THE COURT: That's what he wanted?
THE DEFENDANT: Yes.
THE COURT: All right. Sentence will be set down for Tuesday, January 14th, 1986, at 9 a.m.
The defendant will be remanded then to the New York Authorities and then returned here for sentencing.
THE DEFENDANT: Thank you, your Honor.
We conclude that when defendant asked to be returned to the MCC in New York prior to sentencing in New Jersey, he waived any statutory rights he had under the IAD. The "waiver" of a statutory right need not be developed as formally as a waiver of a constitutional right. Thus, "the `knowing and intelligent' standard is not the appropriate test for determining whether or not there has been a waiver of [IAD] rights." Yellen v. Cooper, 828 F.2d 1471, 1474 (10th Cir.1987). Here, the waiver flowed from defendant's request to be returned to the original place of confinement, even though defendant may not then have been informed of the consequences of that return under the IAD. As the Seventh Circuit in Webb v. Keohane, 804 F.2d 413, 414-15 (7th Cir.1986), has pointed out in a case involving an Article IV(e) claim:

*129 All the circuits that have reached the issue have held that the rights under Article IV(e) are waived by a prisoner's request to be returned to his original place of imprisonment. United States v. Black, 609 F.2d 1330, 1334 (9th Cir.1979), cert. denied, 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); Gray v. Benson, 608 F.2d 825, 827 (10th Cir.1979) (per curiam); United States v. Eaddy, 595 F.2d 341, 344 (6th Cir.1979); United States v. Ford, 550 F.2d 732, 742 (2d Cir.1977), aff'd on other grounds sub nom., United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); see also United States v. Lawson, 736 F.2d 835, 838-39 (2d Cir.1984); Brown v. Wolff, 706 F.2d 902, 907 (9th Cir.1983); Camp v. United States, 587 F.2d 397, 400 (8th Cir.1978). The courts have reasoned that only constitutional rights require a knowing and intelligent waiver, and therefore waiver of the statutory rights under the IAD need not be knowing and intelligent. Black, 609 F.2d at 1334; Camp, 587 F.2d at 400.
In the instant circumstances, where defendant had counsel at the time of plea, and personally requested the transfer back to New York, we are further satisfied that there was no "excusable neglect" for his failure to raise the IAD issue for more than five years after sentencing. Therefore, defendant's petition for post-conviction relief is time-barred. See R. 3:22-12. See also State of New Jersey v. Mitchell, 126 N.J. 565, 575-77, 579-83, 601 A.2d 198 (1992). This is particularly true because it appears that in 1990, defendant endeavored to file a direct appeal, nunc pro tunc, from the conviction, and we denied the application, stating on March 9, 1990 (well within the five-year period following conviction), that:
[t]he motion is denied without prejudice to defendant's right to file for post-conviction relief before the trial court on the grounds of counsel's failure to advise him of his right to object to the proceeding because of the Interstate Compact.
Certification was denied on May 21, 1990, also within five years of the conviction.
We have addressed the merits of defendant's petition to avoid the contention that the 1990 endeavor to appeal was the equivalent of a timely petition for post-conviction relief, and to "demonstrat[e] that reliance on the procedural bar has caused no injustice." See State of New Jersey v. Preciose, 129 N.J. 451, 477, 609 A.2d 1280 (1992). See also Mitchell, supra, 126 N.J. at 579-83, 601 A.2d 198. While we reject defendant's claim because there was no "excusable neglect" for the tardy filing of the petition, we also reject his claim under the IAD and find no "injustice" *130 warranting relief from the time-bar. Mitchell, supra, 126 N.J. at 583, 601 A.2d 198.
The judgment is affirmed.
NOTES
[1] Defendant alleges in his petition that he was returned to New Jersey under Article IV of the IAD, and although the record before us does not develop that fact, we will assume it to be the case for purposes of this opinion.
[2] The record does not reflect the reason for the request. It may have been the result of a desire to obtain sentence credits in New York while awaiting sentencing in New Jersey.