STATE of Wisconsin, Plaintiff-Respondent,

v.

Brook GRZELAK, Defendant-Appellant.†

Court of Appeals

*No. 97–1454–CR. Submitted on briefs November 24, 1997.—Decided December 9, 1997.*

(Also reported in 573 N.W.2d 538.)

---

†Petition to review denied.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ann Auberry* of *Rebholz, Auberry & Malone* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

HOOVER, J. Article III of the Interstate Agreement on Detainers, § 976.05(3), STATS., requires that a prisoner who demands final disposition of "any untried indictment, information or complaint" must be brought "to trial within 180 days . . . ." This case requires us to determine whether this time limitation applies to detainer requests where the prisoner has already been convicted but not sentenced. The trial court held that it does not. We agree, and therefore affirm the judgment of conviction.

Brook Grzelak was originally charged with six counts of burglary. In November 1994, he entered pleas of no contest to five of the charges. The trial court accepted his pleas, found Grzelak guilty and scheduled

sentencing for January 26, 1995. Grzelak failed to appear at sentencing and a bench warrant for his arrest was issued the next day.

At some point after his failure to appear, Grzelak was imprisoned in Iowa. Pursuant to § 976.05(3)(a), STATS., he filed a demand to be returned to Brown County to conclude the pending burglary charges. The Brown County district attorney's office received the demand on May 17, 1996. Grzelak was returned to Brown County Circuit Court on October 11, 1996. The intake judge scheduled the case before the assigned trial court for sentencing on December 2, 1996. The parties agree that the scheduling date was set for fifteen days after the 180-day time limit expired.

On the date set for sentencing, Grzelak filed and argued a motion to dismiss all charges with prejudice under § 976.05(3)(d), STATS., because of the alleged 180-day time limit violation. The trial court denied the motion, ruling that the statute's requirement does not apply when the detainer request is solely based on sentencing.[1] Grzelak was then sentenced to five concurrent ten-year prison terms.

---

[1] The trial court also found that Grzelak waived his right to a speedy disposition when he acquiesced to the December 2, 1996, sentencing date and that the court's congested calendar provided "good cause" for a continuance under the Agreement. In light of our holding that the time limitation does not apply to sentencing, we do not reach these issues. Nor do we consider Grzelak's contention that "trial" in art. III should be construed to include sentencing because this court has held the Sixth Amendment right to a speedy trial applicable to the sentencing phase. As the State observes, this argument begs the question before us. We are merely ascertaining whether the Agreement on Detainers was intended to give prisoners a *statutory* right to be sentenced on a prior conviction within 180 days after a demand is made under art. III.

The Agreement is a congressionally sanctioned interstate compact that establishes procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another. *Cuyler v. Adams*, 449 U.S. 433, 442–43 (1981). Wisconsin is a party to the Agreement. Section 976.05, STATS. The Agreement establishes two procedures under which the prisoner may be transferred to the custody of the receiving state. Article III provides the prisoner-initiated means. *Cuyler*, 449 U.S. at 443–44. This article is codified in § 976.05(3)(a) and provides in relevant part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Failure to comply with the article results in dismissal of the pending indictment, information or complaint with prejudice. Section 976.05(5)(c), STATS.

This case requires us to interpret § 976.05(3)(a), STATS., which we do de novo. *See Kettner v. Wausau Ins. Cos.*, 191 Wis. 2d 723, 732, 530 N.W.2d 399, 402 (Ct. App. 1995). Grzelak contends that the words "trial" and "final disposition" as used in art. III encompass sentencing. Thus, he argues, failure to sentence a detainee within the 180-day time limit, absent a finding of good cause, should result in dismissal of pending charges. We are not persuaded.

Grzelak relies primarily on *Tinghitella v. California*, 718 F.2d 308 (9th Cir. 1983), where the court held that the Agreement's reference to "trial" and "final disposition" includes sentencing. *Id.* at 311. The court reached this result upon its observations that the term "trial" in the Sixth Amendment speedy trial clause of the United States Constitution has been construed to encompass sentencing and that "the central policy foundations of the IAD support a broad construction of the term 'trial' . . . ." *Id.*

The *Tinghitella* decision has generally not been embraced. Grzelak concedes and the State documents that most courts have held that the word "trial" in the Agreement on Detainers does not encompass a sentencing hearing.[2] Indeed, some of these decisions

---

[2] Article III cases: *Moody v. Corsentino*, 843 P.2d 1355, 1369–70 (Colo. 1993); *State v. Lewis*, 422 N.W.2d 768, 771 (Minn. Ct. App. 1988); *State v. Barefield*, 756 P.2d 731, 734 (Wash. 1988); *State v. Burkett*, 876 P.2d 1144, 1147–48 (Ariz. Ct. App. 1993); *People v. Barnes*, 287 N.W.2d 282, 283–84 (Mich. Ct. App. 1979); *State v. Sparks*, 716 P.2d 253, 255 (N.M. Ct. App. 1986); *State v. Leyva*, 906 P.2d 910, 912 (Utah Ct. App. 1995); *People v. Randolph*, 381 N.Y.S.2d 192, 194 (Sup. Ct. 1976).

Article IV(e) (analogous "anti-shuttling" provision) cases: *United States v. Currier*, 836 F.2d 11, 16 (1st Cir. 1987); *Sassoon v. Stynchombe*, 654 F.2d 371, 373–74 (5th Cir. 1981); *United*

criticize *Tinghitella* as inharmonious with the principle espoused in the subsequent Supreme Court case, *Carchman v. Nash*, 473 U.S. 716, 725 (1985), that the phrase "untried indictment, information or complaint" in art. III refers "to criminal charges pending against a prisoner." The Court in *Carchman* held that art. III does not apply to detainers based on probation violations. *Id. Carchman* is not plainly dispositive because a broad interpretation of the Court's phrase "charges pending" might encompass a criminal case that is not fully and finally disposed of.[3] We find language in *Carchman* interpreting art. III, however, to lead to the conclusion that the time limitation was intended to apply only to the situation where guilt has not been adjudicated. We also find persuasive the decision in *State v. Sparks*, 716 P.2d 253 (N.M. Ct. App. 1986), discussed at length in the State's brief.

■

The primary source of interpretation is the statutory language itself. *Hartlaub v. Coachmen Indus.*, 143 Wis. 2d 791, 797, 422 N.W.2d 869, 871 (Ct. App. 1988). In *Carchman,* the Supreme Court applied this maxim and observed the words "indictment,"

States v. Coffman, 905 F.2d 330, 331–32 (10th Cir. 1990); State v. Miller, 649 A.2d 94, 95–96 (N.J. Super. Ct. App. Div. 1994).

The State represents that only one court has followed the holding in *Tinghitella v. California,* 718 F.2d 308 (9th Cir. 1983): *Hall v. Florida,* 678 F. Supp. 858, 860–62 (M.D. Fla. 1987).

[3] The issue in *Carchman v. Nash,* 473 U.S. 716 (1985), was whether the language "untried indictment, information or complaint" was broad enough to encompass a parole or probation violation charge, or whether the Agreement only applied to original criminal prosecutions.

"information" and "complaint" refer to documents charging criminal offenses. *Id*. at 724. Qualifying these words by the term "untried" strongly implies a situation where guilt has not been adjudicated. When the additional phrase "the prisoner shall be *brought to trial* within 180 days" (emphasis added) is considered, we are unable to find any ambiguity and conclude that this article applies only to detainers where a determination of guilt has not yet been made. This determination is fortified by the following language from *Carchman*: "Nor, of course, will the probationer be 'prosecuted' or 'brought to trial' on the criminal offense for which he initially was sentenced to probation, since he already will have been *tried and convicted* for that offense." *Id*. at 725 (emphasis added). Although this language arises in a different context, it nonetheless affords insight into the Court's general view of the scope of the language in question.

While the Supreme Court found the language unambiguous in determining the different issue whether a detainer based on a probation violation charge is a detainer based on "any untried indictment, information or complaint" within the meaning of art. III, it nonetheless tested its interpretation against the Agreement's legislative history. It noted that:

> Adoption of the Agreement was motivated in part by a practice of filing detainers based on untried criminal charges that had little basis. These detainers often would be withdrawn shortly before the prisoner. was released. Even though unsubstantiated, the detainers would have a detrimental effect on the prisoner's treatment. Article III enables a prisoner to require the State lodging the detainer either to drop the charge and resulting detainer or to bring the prisoner to trial.

> In this way, the prisoner can clear his record of detainers based on unsubstantiated charges.

*Id*. at 729–30 (footnotes omitted).

Where, as here, the defendant already stands convicted, the "charge will not be unsubstantiated. Thus, the abuses that in part motivated adoption of the Agreement generally do not occur in the context of" sentencing. *Id*. at 731.

In *Sparks,* the court examined art. III and also concluded that it applies to indictments, informations or complaints that are pending and *untried,* in the plain meaning of the word. *Id*. at 256. To bolster its interpretation, it made what we consider to be a cogent observation that the Agreement only requires that the detainee *be brought to trial* within 180 days, not that the trial must be concluded within that time limit. The time limitation is satisfied upon the trial commencing within 180 days of the prosecutor's receipt of the detainee's demand. This construction is consistent both with the compelling facial import of the phrase "brought to trial" and the underlying purpose of the Agreement as discussed in *Carchman*. More importantly, it compels the conclusion that the art. III time limitation does not apply when the defendant has been convicted but not yet sentenced.

■

We hold that the art. III requirement, codified in § 976.05(3), STATS., that a prisoner who demands final disposition of "any untried indictment, information or complaint" must be brought "to trial within 180 days," does not apply where the detainee has been convicted but not sentenced within the time limitation. We therefore affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.