IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2024 Session

## STATE OF TENNESSEE v. SERVADIO M. BOYD

**Appeal from the Criminal Court for Davidson County**
**No. 2014-A-367      Cheryl A. Blackburn, Judge**

_____

### No. M2023-00259-CCA-R3-CD

_____

Defendant, Servadio M. Boyd, was convicted on a plea of guilty of possession of .5 grams or more of cocaine with intent to sell before the Davidson County Criminal Court in 2014. As part of his plea agreement with the State, Defendant agreed to an eight-year sentence with the manner of service to be decided by the trial court at a sentencing hearing. Prior to his sentencing hearing, however, Defendant left the jurisdiction. He was then arrested and convicted of dealing in cocaine and conspiracy to commit dealing in cocaine in the Vanderburgh Circuit Court of Indiana, for which he received a sentence of thirteen years' incarceration. Based upon his failure to appear at his sentencing hearing in Davidson County, the trial court issued an arrest warrant and lodged a detainer against Defendant. In 2019, Defendant filed, in the Davidson County Criminal Court, a motion to dismiss the detainer, arguing that the charges against him should be dismissed with prejudice based on an alleged violation of the Interstate Agreement on Detainers. Following a hearing and briefing by the parties, the trial court granted Defendant's motion and dismissed the case against Defendant. The State appealed. Following a thorough review, we reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward and Jonathan H. Wardle, Senior Assistant Attorneys General; Glenn R. Funk, District Attorney General; and Wilmoth (Bud) Baker, Assistant District Attorney General, for the appellant, State of Tennessee.

Justin Johnson, Madison, Tennessee, for the appellee, Servadio M. Boyd.

# OPINION

## Factual and Procedural Background

On February 21, 2014, the Davidson County Grand Jury indicted Defendant, in Case No. 2014-A-367, on the following charges: Count 1, possession with intent to sell or deliver over twenty-six grams of cocaine in a Drug Free Zone; Count 2, possession with intent to sell or deliver not less than one-half ounce nor more than ten pounds of marijuana in a Drug Free Zone; Count 3, possession of drug paraphernalia; Count 4, evading arrest; and Count 5, resisting arrest. On June 19, 2014, Defendant entered into a plea agreement on Count 1. Pursuant to the plea agreement, Defendant pleaded guilty to the lesser-included offense of possession of .5 grams or more of cocaine with intent to sell (without the Drug Free Zone enhancement), for which he would receive an eight-year sentence as a Range I offender, with the manner of service of the sentence to be determined by the trial court at a sentencing hearing.

Defendant acknowledged that he understood the terms of his plea agreement, the potential exposure he faced under the original charges, and the trial and appellate rights he was waiving by entering his guilty plea. The trial court found that Defendant's plea was knowing and voluntary and accepted the plea, finding Defendant guilty of the lesser-included offense of possession of .5 grams or more of cocaine with intent to sell in Count 1. The court dismissed all remaining counts. The court set Defendant's sentencing hearing for August 15, 2014.

On July 17, 2014, Defendant was arrested in Indiana and charged with dealing in cocaine and conspiracy to commit dealing in cocaine. Thereafter, Defendant failed to appear for his August 15, 2014 sentencing hearing in Davidson County. At the hearing, defense counsel announced to the court that Defendant was in jail in Evansville, Indiana. Due to his failure to appear, the trial court issued a capias for Defendant's arrest, and a detainer was filed against him. On February 15, 2017, Defendant pleaded guilty to dealing in cocaine and conspiracy to commit dealing in cocaine in the Vanderburgh Circuit Court of Indiana, for which he received an effective thirteen-year sentence.

On April 1, 2019, Defendant filed a pro se Motion to Dismiss Detainer ("Motion to Dismiss") in the Davidson County Criminal Court. In the Motion to Dismiss, Defendant asserted that he was currently serving a thirteen-year sentence in Indiana for "conspiracy" and "dealing." Defendant alleged that, on September 26, 2018, he was served with a copy of the detainer and was provided Interstate Agreement on Detainers (IAD) forms and that, on the same day, he "submitted to the institutional officials at Branchville Correctional Facility, the appropriate [IAD] forms," in which he requested that the Davidson County

Criminal Court and Davidson County District Attorney's Office ("the District Attorney's Office") "take further action in relation to [his] pending charges." He alleged that the forms were sent by certified mail to "both the clerk of the court and the [p]rosecuting officials for Davidson County" with "delivery being made to the appropriate parties" on September 28, 2018. Defendant maintained that more than 180 days had passed since the receipt of Defendant's request without further action being taken, and he asserted that the "charges against him must be dismissed with prejudice as mandated by Article V(c) of the [IAD]."

On June 12, 2020, Defendant mailed a letter to the District Attorney's Office, in which Defendant stated he was providing "proper legal notice" that he was incarcerated in Indiana, that he had received the detainer, and that he was "invok[ing] the Speedy Trial provision" of the IAD. Defendant also averred that he tried to have prison officials "initiate" the IAD and that he was "working [his] way through the administrative remedy process challenging their misinterpretation and misapplication of the language" of the IAD. In a letter dated July 14, 2020, the District Attorney's Office informed Defendant that his case did not fall under the IAD and that it would extradite Defendant back to Davidson County once he completed his sentence in Indiana.

On January 6, 2022, Defendant, through counsel, filed a brief in support of his Motion to Dismiss. Attached to the brief, Defendant included: (1) a copy of the Motion to Dismiss; (2) a photocopy of what appears to be an envelope mailed to the Davidson County Criminal Court Clerk's Office by Defendant stamped with the date March 29, 2019; (3) a copy of a handwritten letter to the District Attorney's Office from Defendant dated June 12, 2020; (4) a copy of an envelope mailed to the District Attorney's Office by Defendant and stamped with the date June 22, 2020; and (5) a copy of a letter from the District Attorney's Office to Defendant dated July 14, 2020.

On October 7, 2022, Defendant was released on parole in Indiana, extradited to Tennessee, and booked into the Davidson County jail on the outstanding capias. On November 30, 2022, the Davidson County Criminal Court held an initial hearing on the Motion to Dismiss. The trial court questioned whether Defendant had copies of paperwork showing when he sent his initial request for disposition; Defendant stated that he had the paperwork in the jail. The trial court asked Defendant to give the paperwork to his counsel to bring to the next hearing date. On December 12, 2022, the trial court then instructed the parties to file written briefs in support of their respective positions on the Motion to Dismiss.

On January 6, 2023, the parties complied with the trial court's request and filed written briefs. In its brief, the State argued that the IAD did not apply to "purely sentencing matters" and that it had never received proper notice of Defendant's request for disposition under the IAD. In Defendant's brief, he argued that the State received adequate notice of

his request for disposition and that the IAD applied to sentencing hearings. Defendant attached the following items to his brief: (1) a copy of a form entitled "Motion to Dismiss Detainer filled out by Defendant while he was incarcerated in Indiana and stamp-filed by the Davidson County Criminal Court Clerk on April 1, 2019, which stated where Defendant was being held, the time of his sentence, and other information that is required by Article III of the IAD; (2) a copy of a handwritten letter from Defendant to the District Attorney's Office dated June 12, 2020, informing the office of his whereabouts, his sentence, the fact that he has a detainer placed against him, and his desire to have his charges resolved; and (3) a copy of a letter from the District Attorney's Office to Defendant dated July 14, 2020, and in response to the June 12, 2020 letter from Defendant, asserting that Defendant's case did not fall under the IAD and that Defendant would be extradited to Tennessee upon the expiration of his Indiana sentence. Defendant asserted that because the State failed to bring him to trial within 180 days of its receipt of his written notice and request for final disposition, the trial court should dismiss his case with prejudice.

On January 20, 2023, the trial court entered a written order granting Defendant's Motion to Dismiss.[1] The court found that the State received adequate notice under the IAD based upon the Motion to Dismiss, the June 12, 2020 letter, and the State's July 14, 2020 response. The trial court also concluded that the IAD applied to sentencing detainers. Citing *Pollard v. United States*, 352 U.S. 354, 361 (1957), the court reasoned that "[f]or the Supreme Court to find that a delay in sentencing can be violative of a defendant's [c]onstitutional rights seems indicative that sentencing is an integral part of an 'indictment, information, or complaint,' and delay is something that the [IAD] was designed to address." The court further noted that the remedial nature of the IAD required that it be construed liberally in favor of those it was intended to benefit, and the court found that "any unclear language in this statute should be interpreted in favor of . . . Defendant."

This timely State appeal follows.

## Analysis

On appeal, the State contends that the trial court erred in granting Defendant's Motion to Dismiss because Defendant failed to give proper notice under the IAD and because the IAD does not apply to detainers based on "purely sentencing matters." Defendant responds that the trial court correctly concluded that he gave proper notice under the IAD and that the IAD applies to sentencing detainers.

---

[1] Although not addressed in the trial court's written order, by dismissing the case against Defendant, the court also necessarily vacated Defendant's conviction for possession of .5 grams or more of cocaine with intent to sell.

**1. Does the IAD apply to detainers lodged against a prisoner based on "purely sentencing matters"?**

The State challenges the trial court's ruling that the IAD applied to the detainer lodged in this case, even though Defendant had already pleaded guilty to the charge "and all that remained was to determine the manner of his sentence." The State argues that the trial court's ruling conflicts with the plain language of the IAD and conflicts with most jurisdictions that have considered the issue of whether the IAD applies to sentencing detainers. The State urges this court to adopt the majority view and hold that the IAD does not apply to purely sentencing matters and reverse the trial court's decision granting the Motion to Dismiss.

In response, Defendant contends that the trial court correctly held that the IAD applies to sentencing detainers. Defendant acknowledges that the trial court's ruling is inconsistent with the majority view of the issue. Nevertheless, Defendant argues that this court should conclude the phrase "untried indictment, information, or complaint," as used in the IAD, encompasses sentencing because "'trial' . . . include[s] sentencing for purposes of federal statutory construction and the Sixth Amendment" and because the IAD is to "be liberally construed so as to effectuate its purpose[.]"

Initially, we recognize that the IAD is "a compact between the states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States" that was adopted by Tennessee and codified at Tennessee Code Annotated section 40-31-101.[2] *State v. Brown*, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000). "The IAD provides cooperative procedures for transfers of prisoners between the federal and state jurisdictions that have adopted the interstate compact." *State v. Springer*, 406 S.W.3d 526, 531 (Tenn. 2013) (citing Tenn. Code Ann. § 40-31-101, Art. I; *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001)); *see also State v. Garmon*, 972 S.W.2d 706, 710 (Tenn. Crim. App. 1998) (citing *Grizzell v. Tennessee*, 601 F. Supp. 230 (M.D. Tenn. 1984)) (noting that the provisions of the compact are statutory rights, not fundamental, constitutional, or jurisdictional)). As explained by our supreme court:

> The IAD recognizes that outstanding charges against a prisoner, detainers based on untried indictments, and difficulty getting a speedy trial in another jurisdiction produce uncertainties that can obstruct a prisoner's participation in rehabilitation and treatment programs. Detainers can "adversely influence a prisoner's classification as a maximum or close custody risk, as well as his or her eligibility for work assignments, preferred living accommodations,

---

[2] The IAD has been enacted in all but two states, Louisiana and Mississippi. *See State v. McCarter*, 469 So.2d 277, 285 (La. Ct. App. 1985); *Gardner v. State*, 57 So.3d 688, 689 (Miss. Ct. App. 2011).

work release programs, and parole." To minimize the disruption of a prisoner's rehabilitation program, the IAD provides for the "expeditious and orderly disposition of the charges underlying such detainers."

*Springer*, 406 S.W.3d at 531-32 (internal citations and footnote omitted). The purpose of the IAD is to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Tenn. Code Ann. § 40-31-101, Art. I.

The provisions of the IAD are triggered only upon the filing of a detainer, which is defined as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent[,]" *Brown*, 53 S.W.3d at 285 (internal quotation marks omitted), and upon request by a prisoner, a state lodging a detainer must either bring the prisoner to trial within the time allotted under the IAD or dismiss the charges. *State v. Hill*, 875 S.W.2d 278, 280 (Tenn. Crim. App. 1993) (citing *Carchman v. Nash*, 473 U.S. 716, 724 (1985)). "In this way, a prisoner is able to dispose of detainers which may preclude him from parole consideration and work-placement programs, or may cause him to be confined under more severe security measures than otherwise." *Id*. at 280-81 (citing *Nelms v. State*, 532 S.W.2d 923, 927 (Tenn. 1976)).

Under the IAD, a "state" may function as either a "sending state" or a "receiving state." *Springer*, 406 S.W.3d at 532 (citing Tenn. Code Ann. § 40-31-101, Art. II(a)-(b)). The sending state is the jurisdiction where the prisoner is incarcerated at the time he makes a request for disposition or when an appropriate official in another IAD jurisdiction requests the prisoner's transfer. *Id*. (citing Tenn. Code Ann. § 40-31-101, Art. II(b)). "The receiving state is the jurisdiction in which trial is to be had on a pending indictment, information, or complaint[.]" *Id*. (citing Tenn. Code Ann. § 40-31-101, Art. II(a)).

The IAD establishes two procedures under which the prisoner may be transferred to the custody of the receiving state. Article III provides the prisoner-initiated means and provides in relevant part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment *there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner*, the person *shall be brought to trial* within one hundred eighty (180) days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and

request for a final disposition to be made of the indictment, information or complaint . . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good and honor time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

Tenn. Code Ann. § 40-31-101, Art. III(a) (emphasis added). Thus, the IAD's 180-day time limit begins after the prisoner "cause[s] to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint[.]" *Id*.; *see also Fex v. Michigan*, 507 U.S. 43, 52 (1993) ("We hold that the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him."). The IAD provides that, if the prisoner's pending charge is not "brought to trial" within 180 days (subject to some tolling principles) or if the prisoner is returned to the sending state prior to trial, the trial court "shall enter an order dismissing the same with prejudice." Tenn. Code Ann. § 40-31-101, Art. III(d), V(c).

This case requires us to interpret Article III of the IAD. We recognize that the IAD is a federal law subject to authoritative construction by the Supreme Court of the United States. *Springer*, 406 S.W.3d at 532 (citing *Cuyler v. Adams*, 449 U.S. 433, 438 (1981)). This court is bound by the Supreme Court of the United States' construction of the terms of this agreement. *Id*. (citing *In re All Assessments*, 67 S.W.3d 805, 818-19 (Tenn. Ct. App. 2001)). The remedial nature of the IAD requires that it should be liberally construed in favor of the prisoners whom it was intended to benefit. *Nelms*, 532 S.W.2d at 927 (citing *Commonwealth v. Fisher*, 301 A.2d 605, 607 (1973)); *see also* Tenn. Code Ann. § 40-30-101, Art. IX. Additionally, because the IAD is meant to be cooperative, the interpretation other states have given to the IAD should be given "substantial weight in construing the agreement's provisions." *United States v. Coffman*, 905 F.2d 330, 333 (10th Cir. 1990); *see also People v. Fex*, 479 N.W.2d 625, 627 n.5 (Mich. 1992) ("An obvious purpose of an interstate agreement is to achieve a uniform body of law in the jurisdictions that have enacted the agreement. Absent sound reasons to the contrary, it is therefore sensible to interpret such an agreement in the same manner as a majority of other jurisdictions.").

This court's interpretation of the language of the IAD involves statutory construction; it is a question of law, which we review de novo with no presumption of correctness. *Springer*, 406 S.W.3d at 532-33 (citing *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)). "The overriding purpose of a court in construing a statute is to ascertain

and effectuate the legislative intent, without either expanding or contracting the statute's intended scope." *Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52-53 (Tenn. 2018). "In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). This court presumes that "every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." *Springer*, 406 S.W.3d at 533 (citing *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)).

The issue in this case is whether a detainer lodged against a defendant who has fled the state after pleading guilty, but before sentencing, is a detainer based on an "untried indictment, information, or complaint" as used in Article III(a) of the IAD. This appears to be an issue of first impression in Tennessee. For the reasons that follow, we hold that where, as here, a defendant has been convicted of a crime as the result of a guilty plea, there is no pending "untried indictment, information, or complaint[,]" even though the defendant has not yet been sentenced, and a sentencing detainer lodged against the defendant in that situation is not subject to the provisions of the IAD.

This court has previously recognized that the IAD only requires that a *trial* be commenced within the 180-day period, not that all subsequent proceedings—including sentencing—be completed within that period of time. *See Hill*, 875 S.W.2d at 281-82; *cf. Coffman*, 905 F.2d at 332 ("[T]he IAD differentiates between the trial phase of a proceeding and all post-trial procedures, including sentencing."). In *Hill*, the defendant was returned to the receiving state and received a trial within the 180-day period, but he was not sentenced within that time span. *Hill*, 875 S.W.2d at 280. The defendant argued that because the "final disposition" of charges against him was not achieved within the time allotted by the IAD, the charges and verdicts against him should be rendered invalid. *Id*. "The crux of [the defendant's] argument is that since sentencing is part of the trial, the final disposition of his case did not occur in accordance with Article III(a) of the [IAD]." *Id*. at 281. In rejecting the defendant's argument, this court explained:

> The plain language of the [IAD] indicates that clear distinction between "trial" and "final disposition" was intended. Article III requires that a prisoner "*shall be brought to trial* within one hundred eighty (180) days" of the delivery of a request for final disposition to the proper official in the jurisdiction where charges are pending. Tenn. Code Ann. § 40-31-101, Art. III(a) (1990 Repl.) (emphasis added). The only other reference to "trial" is found in paragraph (d). That section requires that "[i]f trial is not had . . . prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

*Id*., Art. III(d).  The term "final disposition" is used in reference to the request made by the prisoner.  It is never used in reference to the speedy disposition requirement.

. . . .

The [IAD] uses the term "request for final disposition" as the title of the request required to set in motion the provisions of Article III.  Once the request for final disposition is made, Article III requires that the trial commence within one hundred eighty days of the receipt of that request.  It does not require that the trial, including sentencing, be completed within that time period.

*Id*. at 281-82 (footnote omitted).

Although *Hill* involved a different procedural posture than the instant case, the reasoning in *Hill* supports our conclusion that, when a defendant has been convicted of a crime as the result of a guilty plea, there is no pending "untried indictment, information, or complaint[,]" even though the defendant has not yet been sentenced, and that a detainer for sentencing lodged against such a defendant is not subject to the provisions of the IAD.  *See also Carchman*, 473 U.S. at 724-25; *Blackwell v. State*, 546 S.W.2d 828, 829 (Tenn. 1976) (stating that "[t]he term 'untried' refers to matters which can be brought to a full trial" and concluding that the IAD provision requiring trial on a charge on which a detainer is based within 180 days of the defendant's demand did not apply to a detainer based on a probation violation capias).

Additionally, our holding is supported by rulings in other jurisdictions.  As noted by the State, almost every court considering this issue has concluded that the IAD does not apply to sentencing detainers.  *See, e.g.*, *State v. Sills*, 317 P.3d 307, 314 (Or. Ct. App. 2013); *State v. Jimenez*, 808 N.W.2d 352, 357 (Neb. 2012); *State v. Bates*, 689 N.W.2d 479, 481 (Iowa Ct. App. 2004); *Painter v. State*, 848 A.2d 692, 705 (Md. Ct. Spec. App. 2004); *Prince v. State*, 55 P.3d 947, 949-51 (Nev. 2002); *State v. Miller*, 4 P.3d 570, 575 (Idaho Ct. App. 2000); *Lancaster v. Stubblefield*, 985 S.W.2d 854, 856 (Mo. Ct. App. 1998); *State v. Grzelak*, 573 N.W.2d 538, 584 (Wis. Ct. App. 1997); *State v. Leyva*, 906 P.2d 910, 910-11 (Utah Ct. App. 1995), *abrogated on other grounds by Betterman v. Montana*, 578 U.S. 437 (2016); *Moody v. Corsentino*, 843 P.2d 1355, 1369 (Colo. 1993); *State v. Barefield*, 756 P.2d 731, 733 (Wash. 1988).  Many of those cases involved situations like Defendant's, where the prisoner pleaded guilty to charges but was never sentenced because the prisoner failed to appear for a sentencing hearing.  *See, e.g.*, *Jimenez*, 808 N.W.2d at 353-54; *Miller*, 4 P.3d at 575; *Lancaster*, 985 S.W.2d at 855; *Leyva*, 906 P.2d at 910-11; *Moody*, 843 P.2d at 1369.

Federal courts have also reached similar conclusions when interpreting provisions of the IAD. *See, e.g.*, *Coffman*, 905 F.2d at 333 ("We hold that 'trial' in the IAD anti-shuttling provisions does not include sentencing."); *Pomales v. Hoke*, No. 1:11-CV-2616, 2012 WL 2412061, at *7 (N.D. Ohio June 26, 2012) (similar); *McManus v. Borgen*, No. 04-C-0040, 2005 WL 2347296, at *4 (E.D. Wis. Sept. 26, 2005) (noting that, although the petitioner had cited caselaw relevant to "the applicability of the Sixth Amendment's speedy trial guarantee to the sentencing phase, he cites no decision from the Supreme Court holding that the IAD is violated when an already convicted prisoner is not returned for sentencing within the time allotted. In fact, most courts have rejected this argument . . . .").

Defendant's argument for interpreting the term "trial" to include a sentencing hearing is based primarily on caselaw interpreting the Sixth Amendment to the United States Constitution. Defendant first cites *Pollard*, in which the United States Supreme Court "assume[d] *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment." 352 U.S. at 361 (emphasis added). As an initial matter, we note that the opinion in *Pollard* does not actually hold that the "speedy and public trial" clause of the Sixth Amendment applies to a sentencing hearing. *Id.* Moreover, the purposes of the procedural guarantees in the Sixth Amendment are more likely to justify an expansive interpretation of the word "trial" in those contexts, but the purposes of the IAD are different and narrower. As the Supreme Court of the United States has explained, the IAD is intended to address the "practice of filing detainers based on untried criminal charges that had little basis," which often "would be withdrawn shortly before the prisoner was released." *Carchman*, 473 U.S. at 729-30. "There is . . . less reason to be concerned with detainers . . . where a defendant has already pled guilty and awaits sentencing [because, by] pleading guilty, the defendant has already admitted the truth of the charges and may not relitigate the factual issue of guilt." *Bogue v. Fennelly*, 705 So.2d 575, 579-81 (Fla. Dist. Ct. App. 1997). Thus, we believe that both the trial court's and Defendant's reliance on *Pollard* are misplaced. *See Betterman*, 578 U.S. at 447-49.

Defendant also cites the holdings of *Tinghitella v. California*, 718 F.2d 308 (9th Cir. 1983), and *Hall v. Florida*, 678 F. Supp. 858 (M.D. Fla. 1987). This court had previously recognized that "[n]umerous jurisdictions have criticized *Tinghitella* and *Hall* and have refused to consider a detainer for sentencing as appropriate under the [IAD]." *Hill*, 875 S.W.2d at 283 n.8; *see, e.g.*, *Coffman*, 905 F.2d at 331 ("We disagree with *Tinghitella* . . . ."); *Grzelak*, 573 N.W.2d at 581 ("The *Tinghitella* decision has generally not been embraced."); *Barefield*, 756 P.2d at 732 ("We do not find *Tinghitella* persuasive for several reasons."). Furthermore, as noted by the State, the language in *Tinghitella* appears to be dicta because that court ultimately denied the prisoner's claims for his failure to make a proper request under the IAD. *Tinghitella*, 713 F.2d at 311-12; *see also Miller*, 4 P.3d at 574 ("[A]ny statement by the [*Tinghitella*] court addressing the applicability of the [IAD]

to sentencing detainers is dicta and of no consequence to the outcome of the instant case."). Although, in *Hall*, a Florida federal court adopted the reasoning in *Tinghitella*, a Florida state court has since rejected *Hall*. *See Bogue*, 705 So.2d at 579-81 (rejecting the "minority view" expressed in *Hall* and *Tinghitella*). For these reasons, we remain unpersuaded by the cases relied upon by Defendant.

Consistent with this court's decision in *Hill* and the reasoning followed by a majority of state and federal jurisdictions, we conclude that where a defendant has been convicted of a crime as the result of a guilty plea, there is no pending "untried indictment, information, or complaint[,]" even though the defendant has not yet been sentenced, and a sentencing detainer lodged against the defendant in that situation is not subject to the provisions of the IAD. We, therefore, reverse the judgment of the trial court, reinstate Defendant's conviction for possession of .5 grams or more of cocaine with intent to sell, and remand for a sentencing hearing for the trial court to determine the manner of service of Defendant's eight-year sentence.

**2. Did Defendant provide written notice of the place of his imprisonment and a request for a final disposition as required under Article III(a)?**

For the purposes of further review, we address the State's additional argument concerning adequacy of Defendant's notice and request for final disposition. The Tennessee Supreme Court has held that the prisoner has the burden of giving notice to the receiving state of his request under Article III(a) of the IAD for prompt disposition of charges. *State v. Moore*, 774 S.W.2d 590, 593-94 (Tenn. 1989). Strict compliance with the notice and certification procedures outlined in the IAD is required. *State v. Wood*, 924 S.W.2d 342, 344 n. 6 (Tenn. 1996) (citing *State v. Grizzell*, 584 S.W.2d 678 (Tenn. Crim. App. 1979)). The burden is then on the receiving state to obtain temporary custody of the prisoner and dispose of the case within 180 days, *Nelms*, 532 S.W.2d at 926-27, and to establish that it complied with the 180-day time period. *State v. Lock*, 839 S.W.2d 436, 441 (Tenn. Crim. App. 1992).

The State asserts that the District Attorney's Office never received the written notice and request for final disposition that Defendant alleged, in his Motion to Dismiss, he sent by certified mail to "both the clerk of the court and the [p]rosecuting officials for Davidson County" on September 28, 2018. The State argues that because Defendant did not satisfy the IAD's notice requirement, the 180-day time limit was not triggered.

In ruling on this issue, the trial court found that the District Attorney's Office received written notice of Defendant's incarceration in Indiana and a request for a final disposition under the IAD. We agree that the record establishes Defendant provided notice of his incarceration in Indiana to the District Attorney's Office in his June 12, 2020 letter

and that he requested final disposition of his case under the IAD; moreover, the record shows that the District Attorney's Office received Defendant's written notice and request for final disposition based upon its July 14, 2020 letter, in which the District Attorney's Office informed Defendant that his case did not fall under the IAD and that Defendant would be extradited to Tennessee upon the expiration of his Indiana sentence. Thus, we conclude that Defendant "caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of [his] imprisonment and request for a final disposition" under Article III(a) of the IAD.

The State argues, for the first time on appeal, that Defendant's request for final disposition was not accompanied by a certificate from an appropriate prison official in Indiana, as required by Article III(a), noting that Defendant's June 12, 2020 letter "was not accompanied by any certification by any prison official." The trial court did not address the issue of the certificate in its order granting the Motion to Dismiss, and Defendant has not responded in his brief to the State's contention that his request for final disposition lacked the required certificate from prison officials in Indiana. Because the State failed to raise this argument before the trial court and raised it for the first time on appeal, we conclude that the issue is waived. *See* Tenn. R. App. P. 36(a); *State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016); *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). The State is not entitled to relief on this basis.

### III. Conclusion

Based upon the foregoing, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 12 -